```
 1                 UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2
                  Case No. 19-CR-80030-DIMITROULEAS
 3

 4   UNITED STATES OF AMERICA,          )
                                        )
 5            Plaintiff,                )
                                        )
 6        -v-                           )
                                        )
 7   PHILLIP BRAUN, AARON SINGERMAN,    )
     RUSSELL JAY WILLIAMS, ANTHONY      )
 8   VENTRELLA, JAMES BOCCUZZI, DAVID   )
     WINSAUER, BLACKSTONE LABS, LLC,    )
 9   AND VENTECH LABS, LLC,             )
                                        )
10            Defendants.               )   Fort Lauderdale, Florida
                                        )   August 12, 2019
11   _____)   1:30 p.m.

12           TRANSCRIPT OF MOTION TO CONTINUE TRIAL

13        BEFORE THE HONORABLE WILLIAM P. DIMITROULEAS

14                    U.S. DISTRICT JUDGE

15   Appearances:

16   For the Government:        ALISTAIR READER
                                US DEPARTMENT OF JUSTICE
17                              450 Fifth Street, NW
                                Washington, DC  20530
18
     For the Defendant:         KUEHNE DAVIS LAW, PA
19   Braun                      BY:  BENEDICT KUEHNE, ESQ.
                                100 SE 2nd Street, Suite 3550
20                              Miami, Florida  33131

21   For the Defendant:         RICHARD G. LUBIN, ESQ.
     Singerman                  AMY MORSE, ESQ.
22                              1217 South Flagler Street
                                West Palm Beach, Florida  33401
23
     Reporter:                  Karl Shires, RMR, FCRR
24   (954) 769-5496             Official Court Reporter
                                299 East Broward Boulevard, # 203G
25                              Fort Lauderdale, Florida  33301
```

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

```
 1   APPEARANCES:  (Continued)

 2   For the Defendant:        RUSSELL WILLIAMS, ESQ.
     Dimaggio                  633 SE 3rd Avenue
 3                             Fort Lauderdale, Florida  33301

 4   For the Defendant:        PERLET & SHINER, PA
     Ventrella                 BY:  NANCY VORPE-QUINLAN, ESQ.
 5                             515 North Flagler Drive, Suite 701
                               West Palm Beach, Florida  33401
 6
     For the Defendant:        J. STEPHEN SALTER, ESQ.
 7   Boccuzzi                  8975 Pompano Way
                               Gulf Shores, Alabama  36542
 8
     For the Defendant:        ROBERT BUONAURO, ESQ.
 9   Winsauer                  722 Vassar Street
                               Orlando, Florida  32804
10
     For the Defendant:        KUEHNE DAVIS LAW, PA
11   Blackstone Labs, LLC      BY:  MICHAEL DAVIS, ESQ.
                               100 SE 2nd Street, Suite 3550
12                             Miami, Florida  33131

13   For the Defendant:        ROBERT SHEARIN, ESQ.
     Ventech Labs, LLC         1499 West Palmetto Park Road
14                             Suite 212
                               Boca Raton, Florida  33486
15

16

17

18

19

20

21

22

23

24

25
```

```
 1          (Call to Order of the Court.)

 2              THE COURT:  Please be seated.

 3              United States versus James Boccuzzi.

 4              If counsel would announce their appearances for the

 5   record.

 6              MR. SALTER:  May it please the Court.

 7              MR. READER:  Good afternoon, Your Honor.  Alistair

 8   Reader from the Department of Justice and, with me, AUSA Larry

 9   Bardfeld from the local office.

10              MR. BARDFELD:  Good afternoon, Your Honor.

11              MR. SALTER:  May it please the Court.  Steve Salter,

12   Gulf Shores, Alabama, for the Defendant James Boccuzzi.

13              MR. LUBIN:  Good morning.  Richard Lubin on behalf of

14   Aaron Singerman, who is present in court.

15              MR. KUEHNE:  Judge Dimitrouleas, Ben Kuehne for

16   Phillip Braun, who is also present.

17              MR. BUONAURO:  Your Honor, Robert Buonauro.  I

18   represent Mr. Winsauer, Dave Winsauer, who's present also.

19              MR. DAVIS:  Good morning, Your Honor.  Michael Davis

20   here on behalf of Blackstone Labs.

21              MR. SHEARIN:  Robert Shearin on behalf of Ventech

22   Labs.

23              MS. VORPE-QUINLAN:  Good afternoon, Your Honor.  Nancy

24   Vorpe-Quinlan on behalf of Anthony Ventrella.

25              THE COURT:  And is Mr. Ventrella present today?
```

```
 1              MS. VORPE-QUINLAN:  Mr. Ventrella is present in court
 2   today, Your Honor.
 3              THE COURT:  Okay.
 4              MR. BUONAURO:  May it please the Court.  I neglected
 5   to mention that Mr. Boccuzzi is also present in court.
 6              THE COURT:  Okay.
 7              MR. SHEARIN:  Ventech's corporate representative is
 8   also present.
 9              MR. DAVIS:  As well as Blackstone's corporate
10   representative.
11              THE COURT:  All right.  Before we get to the motion to
12   continue, I noticed that Mr. Bardfeld is involved in the case
13   now.  Mr. Bardfeld I think is conducting an investigation where
14   my in-laws, 93 and 94-year-old in-laws were the victim of
15   identity theft and fraud.  So given that, I want to make a
16   disclosure that he is possibly going to prosecute someone where
17   my in-laws were the victim.
18              So let me take a recess, and you can talk it over with
19   your clients to see whether or not they're comfortable with me
20   staying on the case or whether someone wants me to step aside
21   and ask another judge to take over the case.
22              MR. BARDFELD:  Your Honor, just for the record, I am
23   not involved in this prosecution.  I just came over with
24   counsel.  Mr. Frank is in Washington, DC, and he asked me if I
25   was around this afternoon, and I said I would be more than
```

1  happy just to walk over so . . .

2          THE COURT:  All right.  So it's been my intention to

3  notify counsel that Mr. Bardfeld may be involved in an

4  investigation of individuals or individual who's suspected of

5  committing a fraud on my in-laws.  I hadn't thought that I

6  needed to disclose that in any criminal case where the US

7  Attorney for the Southern District of Florida is involved.  But

8  having done so, let me leave that out there, take a recess in

9  case someone feels that the fact that the US Attorney's Office

10 may be investigating a case that could result in criminal

11 charges against someone who allegedly victimized my in-laws.

12 If that's of concern to somebody, let me know and I'll decide

13 whether I need to disqualify myself.

14          All right.  We'll take a 15-minute recess.

15      (Recess at 1:34 p.m.)

16      (Call to Order of the Court.)

17          THE COURT:  Back on the record.  Counsel are present.

18 The defendants are present.

19          What's the status on my disclosure?

20          MR. LUBIN:  Your Honor, I don't feel that the defense

21 has any issue, we're not making any motions in that regard.

22 We're fine with things the way they are.  But I just did -- I

23 neglected to introduce Amy Morris as my co-counsel when I first

24 stood up, and I would like to introduce her to you now.

25          THE COURT:  Okay.

| | |
|---|---|
| 1 | MS. MORSE:  Good afternoon, Judge. |
| 2 | MR. READER:  Just for the record, Your Honor, Alistair |
| 3 | Reader for the government.  Mr. Bardfeld is not prosecuting |
| 4 | this case in any way, and he came today because my co-counsel |
| 5 | was otherwise occupied and graciously offered to come and take |
| 6 | notes. |
| 7 | THE COURT:  And certainly I have no problem with that. |
| 8 | I just wanted the parties to know about the possibility of |
| 9 | Mr. Bardfeld being involved in a case that conceivably could |
| 10 | impact me because my in-laws live with me. |
| 11 | So any other position on my disclosure? |
| 12 | MR. KUEHNE:  No position, Your Honor.  But Mr. Braun |
| 13 | is prepared to advise the Court that he waives any issue that |
| 14 | might come from the Court's disclosure. |
| 15 | THE COURT:  Probably, in an abundance of caution, I |
| 16 | ought to inquire of everybody regarding that because -- I mean, |
| 17 | if someone has a problem with me being on the case, I probably |
| 18 | would ask the Clerk to randomly assign the case to another |
| 19 | judge.  If everybody wants me to stay on the case, that's fine |
| 20 | with me; but later on if you don't like my rulings, whether |
| 21 | it's the government or one of the defendants, I probably would |
| 22 | not be inclined to disqualify myself, absent there being some |
| 23 | additional basis for disqualification.  So why don't we start |
| 24 | with Mr. Boccuzzi. |
| 25 | MR. SALTER:  May it please the Court.  On behalf of |

```
1   the Defendant Boccuzzi, we have no objection to the Court

2   continuing in the matter.  No position that the Court recuse

3   itself.

4           THE COURT:  Okay.  And how about Mr. Singleman (sic)?

5           MR. LUBIN:  Mr. Singerman.  We -- as I said, we have

6   no objection to the Court remaining on the case.

7           THE COURT:  And how about Mr. Braun?

8           MR. LUBIN:  As stated, Your Honor, Mr. Braun has no

9   objection and is prepared to say so in open court.

10          THE COURT:  And how about Mr. Winsauer?

11          MR. BUONAURO:  Your Honor, on behalf of Mr. Winsauer,

12  Robert Buonauro.  He has no objection to the Court staying on

13  the case, Your Honor.

14          THE COURT:  And how about Mr. Ventrella?

15          MS. VORPE-QUINLAN:  Nancy Quinlan on behalf of

16  Mr. Ventrella who has no objection, Your Honor.

17          THE COURT:  And how about Blackstone Labs?

18          MR. DAVIS:  No objection, Your Honor.

19          THE COURT:  And how about Ventech?

20          MR. SHEARIN:  No objections, Your Honor.

21          THE COURT:  Did I get all of the defendants or did I

22  miss anybody?

23          MR. WILLIAMS:  Mr. Dimaggio, Judge.  Russell Williams

24  on his behalf, and we have no objection.

25          THE COURT:  All right.  So what I would propose doing
```

1    is bringing up each defendant or the corporate representative

2    individually and asking them if they concur with the decision.

3           Again, if there's an appearance of impropriety, if

4    there's an appearance that the Court has a financial interest

5    in something going on, then parties might be uncomfortable with

6    the judge staying on in the case.  You know, I don't know that

7    anybody is ever going to get prosecuted in my in-laws' case.  I

8    don't know that if they get prosecuted that there's ever going

9    to be any restitution entered.  But because it's a possibility,

10   I make that disclosure.

11          Having said that, the lawyers in these cases have all

12   been to law school, have tried a lot of cases, and they've

13   given the defendants the benefit of their legal advice, but

14   it's the defendants' lives or the corporations' existence

15   through the corporate representatives.  The lawyers aren't ever

16   going to do a day in jail in this case.  So if a defendant

17   needs more time to think about this issue or discuss it more

18   with his lawyer, then the defendant should say so.

19          So let's start with Mr. Boccuzzi.  If you can come up,

20   please.

21          MR. SALTER:  Again, may it please the Court.  Steve

22   Salter for the Defendant James Boccuzzi.  This is Mr. Boccuzzi.

23          THE COURT:  Mr. Boccuzzi, have you had enough time to

24   think about this and talk about it with your lawyer?

25          DEFENDANT BOCCUZZI:  Yes.

1          THE COURT:  And do you agree with the strategy of not

2    asking me to step off the case?

3          DEFENDANT BOCCUZZI:  Yes, Your Honor.

4          THE COURT:  Thank you.

5          How about Mr. Singleman (sic)?

6          MR. LUBIN:  Present at the podium, Your Honor.

7          THE COURT:  Mr. Singleman (sic), have you had enough

8    time to think about this and talk about it with your lawyer?

9          DEFENDANT SINGERMAN:  Yes, Your Honor.

10          THE COURT:  And do you agree with the strategy of not

11    asking me to step off the case?

12          DEFENDANT SINGERMAN:  Yes, Your Honor.

13          THE COURT:  Okay.  Thank you.

14          Let me hear from Mr. Braun.

15          MR. KUEHNE:  State your name.

16          DEFENDANT BRAUN:  Phillip Braun, Your Honor.

17          THE COURT:  Mr. Braun, have you had enough time to

18    think about this and talk about it with your lawyer?

19          DEFENDANT BRAUN:  Yes, Your Honor.

20          THE COURT:  And do you agree with the strategy of not

21    asking me to step off the case?

22          DEFENDANT BRAUN:  Yes, Your Honor.

23          THE COURT:  And are you the corporate representative

24    for Blackstone Labs?

25          DEFENDANT BRAUN:  Yes, Your Honor.

```
 1              THE COURT:  And on behalf of Blackstone Labs do you

 2     agree with that strategy?

 3              DEFENDANT BRAUN:  Yes, Your Honor.

 4              THE COURT:  Okay.  Thank you.

 5              And how about Mr. Winsauer?

 6              MR. BUONAURO:  Your Honor, Robert Buonauro.

 7     Mr. Winsauer is stepping up to the podium.

 8              THE COURT:  Mr. Winsauer, have you had enough time to

 9     think about this and talk about it with your lawyer?

10              DEFENDANT WINSAUER:  Yes.

11              THE COURT:  And do you agree with the strategy of not

12     asking me to step off the case?

13              DEFENDANT WINSAUER:  Yes, Your Honor.

14              THE COURT:  Thank you.

15              And how about Mr. Ventrella?

16              MS. VORPE-QUINLAN:  Nancy Quinlan on behalf of

17     Mr. Ventrella.  He's approaching the podium.  This is

18     Mr. Ventrella.

19              THE COURT:  Mr. Ventrella, have you had enough time to

20     think about this and talk about it with your lawyer?

21              DEFENDANT VENTRELLA:  Yes, Your Honor.

22              THE COURT:  And do you agree with the strategy of not

23     asking me to step off the case?

24              DEFENDANT VENTRELLA:  Yes, Your Honor.

25              THE COURT:  And are you also the corporate
```

```
1   representative for Ventech Labs?

2           DEFENDANT VENTRELLA:  Yes, sir.

3           THE COURT:  And on behalf of Ventech Labs do you agree

4   with that strategy?

5           DEFENDANT VENTRELLA:  Yes, Your Honor.

6           THE COURT:  Thank you.

7           And finally, I think we've got Mr. Dimaggio.

8           MR. WILLIAMS:  Judge, Mr. Dimaggio is a resident of

9   Nevada.  He is not present, but I have spoken to him and he

10  does not object.

11          THE COURT:  He really should have been here for

12  today's hearing.

13          What's the government's position?

14          MR. READER:  Your Honor, Mr. Dimaggio is not seeking a

15  continuance.  So, as a result, he didn't think he needed to be

16  present.

17          THE COURT:  Oh, okay.  So why don't we do this on

18  Mr. Dimaggio.  Why don't we give him a certain amount of time

19  to file in writing his position whether he's going to move to

20  disqualify me or whether he doesn't object to my staying on the

21  case.

22          MR. WILLIAMS:  You want it out of the way, Judge?  You

23  want me to file it?

24          THE COURT:  Yes, I think we should have something

25  either way.
```

1           MR. WILLIAMS:  That's fine, Judge.

2           THE COURT:  How much time do you need for that?

3           MR. WILLIAMS:  Ten days.

4           THE COURT:  Okay.

5           MR. WILLIAMS:  I speak to him pretty much every day so

6    it may be even earlier than that.  Thank you.

7           THE COURT:  Okay.  So if Mr. Dimaggio doesn't want to

8    postpone the case, why should I postpone it at all?

9           MR. LUBIN:  Because I'm guessing he's probably

10   pleading, Your Honor.

11          THE COURT:  Well, what's the government's position on

12   that guess?

13          MR. READER:  I think, Your Honor, that is a correct

14   guess.

15          THE COURT:  All right.  So then I'm not going to have

16   to worry about severing the cases if I grant a continuance to

17   some defendants but not to others.

18          Okay.  So as to Mr. Dimaggio, I'm just going to leave

19   the case set for trial in December.

20          MR. WILLIAMS:  That's January.

21          THE COURT:  Oh, yes.  January 6th I think is the trial

22   date.  I meant the calendar call is in the end of December.

23   Thank you.

24          So, Mr. Dimaggio, we'll just leave his calendar call

25   and trial date the same.

1        So let me hear from the other defendants on their

2   motions to continue.

3        MR. LUBIN:  If I may, Your Honor.  Richard Lubin

4   speaking on behalf of Mr. Singerman and possibly everyone else,

5   except for Mr. Dimaggio.

6        I'm going to combine kind of some of the things that

7   the government has said in its response or its objection, I

8   think they titled it, to our motion and some of the things we

9   said also in our reply which we got filed on the weekend due to

10  the timing of things when we received the objection.

11       Any implication that was made in the objection that we

12  as a group are not working hard is an incorrect implication.

13  We are working so hard on this case, and I'm going to go over

14  some of what we're doing.

15       When the case first came into our office and the

16  office of the other lawyers, we began a process of interviewing

17  numerous companies that could host the platform.  We knew this

18  was going to be an e-discovery case, that it was going to have

19  to use the benefit of a platform, searchable platform.  We went

20  through that process, as we said in the motion, and we got

21  prices for various things.  I mean, you can get a Rolls Royce,

22  you can get a Volkswagen, but we knew we had to have a quality

23  team put together.  If we were maybe IBM or Apple, we probably

24  would have had 250 or 500 people reviewing it and it wouldn't

25  have even affected us at all.  But we're not.  And we got

1    prices that were about up to a million dollars for having 40

2    reviewers.  So that couldn't be.  But we, as I say in the

3    pleading and as the others have said in the pleading, we have

4    hired six full-time lawyers, in addition to defense counsel,

5    that are using the electronic -- the e-discovery format with

6    search terms to make this process manageable.

7              So the suggestion, as I took it, the insult, as I took

8    it, from the government's objection that we're amateurs at

9    doing e-discovery and that it's taught in the first year of law

10   school is just wrong.  We are working hard and we have a

11   state-of-the-art review.  And we're paying for it to the tune

12   of $30,000 a month.  That being borne by two of the defendants

13   only because no one else could afford it.  And we are going

14   through approximately 17,000.  We're hoping to up that to maybe

15   20,000 pages per week.  And that has to be done.  Every single

16   document has to be reviewed.  And that --

17             THE COURT:  How many pages are there altogether?

18             MR. LUBIN:  There are 2.1 million.  And we've done all

19   of the computations in the motion and we've laid out, but

20   just --

21             THE COURT:  So that would be 100 weeks to go through

22   it all.

23             MR. LUBIN:  Yes, I think we said 102.  But, yes, that

24   would be a hundred weeks.  But we're not just doing that.  We

25   know that probably two years is a little bit too much of an ask

1  for Your Honor.  So we're not waiting, in other words, we're

2  not waiting for everything to be done.  We are using, you know,

3  code and key questions.  And, you know, so we are reviewing

4  these documents expeditiously as we're going along.  But in --

5  we can't really even file the motions until we get a real

6  handle on everything.

7              I want to say that it's running about 15 or 16 percent

8  of relevant to irrelevant documents.  So although we appreciate

9  that the government has given us, I'm assuming, full discovery,

10  although just a month ago, well past the deadline, we got

11  130-some-odd-thousand new pages of discovery, well past the

12  Court's deadline.  I mean, we're throwing out these numbers.  I

13  was thinking that 130,000 in a regular case.  If the government

14  dumped 130,000 pages on us, even if they were relevant and they

15  had to be relevant, it would throw the whole thing out of

16  whack.  And the government is treating that like, oh, well,

17  that's nothing compared to 2.1 million.  It takes a long time,

18  though, to get through an extra 130,000.  But it's running

19  about 15 to 16 percent relevant to irrelevant documents.

20              So we've computed and, you know, the best you can do

21  is -- based on -- if assuming that it's 15 percent of the

22  2.1 million documents are relevant, necessary, and the

23  15 percent holds true, we're looking at 300 to 350,000 relevant

24  documents by the time this case hits court, trial, motions,

25  whatever it is --

```
 1            THE COURT:  That's 15 weeks.
 2            MR. LUBIN:  -- just to find out which documents are
 3   relevant using e-discovery and using, you know, the search
 4   terms that we've used before we even figure out how is that
 5   going to program into our defense.  How does that affect the
 6   motion to dismiss?  How does it affect a motion to sever?  How
 7   does it affect the cross-examination of the government
 8   witnesses?
 9            And the thing is about the attitude that the
10   government takes, that, well, we've already gotten a
11   continuance -- by the way, they moved for it and we joined in
12   it because it was such a massive case.  And I know the Court
13   will remember us asking for a lot longer than you gave us.  I
14   do remember what you said.  You don't usually give this long.
15   I remember what you said when I said, you know, we're kind of
16   hoping to get it into the summer.  That is what we were
17   thinking.  And you made your decision and, of course, you're
18   the judge.
19            But the staff that the government has available to it
20   to review this stuff, and we know that they've been working on
21   it for a minimum of three-and-a-half years based on some of the
22   actions they've taken, you know, interviews and searches and
23   grand jury subpoenas and to forth.  So they've had it for
24   three-and-a-half years.  Lord knows how many agents, experts,
25   paralegals, lawyers they've had working with them reviewing it,
```

1  and also still working with them at no expense to the

2  prosecution, I might say, because the people are employed

3  anyway.  But we've got this burden and we've taken it on and we

4  all wanted to take it on.  But the reality of this thing, now

5  that we're up close and personal, is it is a massive

6  undertaking.

7  So, as I said, we're spending -- I think I said, we're

8  spending over $30,000 a month just to do this process.  That

9  doesn't take into account what we're going to have to spend on

10  experts, what we're going to have to spend on investigation

11  from what we find out.  We just can't do it.

12  So I can answer any questions.  And I know the other

13  lawyers, maybe Mr. Kuehne, can answer questions on the

14  specifics of this search, but to say we don't know what -- to

15  imply that we're not experienced and don't know what we're

16  doing -- I can speak for I think most of the lawyers at this

17  table.  I've been doing this for 45 years, and I have never

18  been accused of doing something incompetently or not knowing

19  what I'm doing, and I don't think any of the fine lawyers at

20  this table have either.  And each of us is doing everything we

21  can to get through this.

22  The government has admitted in a pleading and asked --

23  and the Court granted their request to designate this as

24  complex.  I think that's the understatement in terms of the

25  quantity of documents.

```
 1              And you made a statement, I remember because it was
 2    exactly what I was thinking at the time, about how -- well,
 3    these defendants have a right to challenge the government's
 4    case.  They have a right to look through the documents and, you
 5    know, do what they want with them.  And you said that at the
 6    last hearing.  And isn't that the essence of it, of the
 7    adversary system.
 8              We go to trial in January with calendar call in
 9    December.  January 6th we're not going to be able to a
10    effectively challenge it.  I just -- I'm not kidding.  You
11    know, I'm not like just posturing for the Court.  This is the
12    real deal, and we've spent a lot of money and we put in place a
13    lot of tools so that we can find this.
14              It took us just 30 days or so to even get set, you
15    know, with what operation we've got now.  But we're all sharing
16    in that.  We intend to go forward.  We do feel that along with
17    the continuance, which we sincerely hope you'll grant, that the
18    deadlines for the motions and the deadlines for the experts
19    will likewise be moved because we just can't, we can't
20    effectively meet them.  We can't really even --
21              THE COURT:  Right now the defense motions are supposed
22    to be filed September 17th?
23              MR. LUBIN:  I think that's the date, and I addressed
24    it in the motion.  I think it's September 17th, yeah.
25              THE COURT:  Do you have a deadline for expert
```

1    disclosure?

2            MR. READER:  No.

3            MR. LUBIN:  The government did, and they've

4    disclosed -- haven't given reports, but have given summaries of

5    a number of expert witnesses.  So we at least have that and we

6    can start to work with that.

7            So, Your Honor, if you have questions, I'll answer

8    them.

9            Oh, there's one more thing, finally.  The government

10   suggested in its objection to our motion that there were speedy

11   trial concerns.  And as we stated in our reply very clearly, we

12   meet every single criteria, every single criteria under the

13   Speedy Trial Act for having a continuance granted and the delay

14   not chargeable to the government for speedy trial purposes.

15   But I'll just cite from 18 USC 3161(7)(b).

16           Whether the failure to grant such a continuance in the

17   proceeding would likely -- would be likely to make a

18   continuation of such proceedings impossible.

19           What they mean is, is the government going to lose

20   their case by doing this.  And the answer to that is no.

21           Or would it result in a miscarriage of justice.

22           The answer would -- a failure to grant this, we

23   believe, would result in a miscarriage of justice to the

24   defense.

25           And whether the case is so unusual or complex.

1          It is.  I addressed that in more detail in the reply.

2   I think it was the first topic I addressed in the reply that we

3   filed this weekend.

4          The Speedy Trial Act is not a concern as it pertains

5   to this case because we meet all of the criteria.

6          So thank you very much.

7          THE COURT:  Mr. Kuehne.

8          MR. KUEHNE:  Good afternoon.  We wanted the Court to

9   understand the approach being used by the parties and the

10  lawyers in this case.  And let me repeat, the parties and the

11  lawyers in this case.  Virtually all of the lawyers here today,

12  at least the ones joining this continuance request, have tried

13  to work together with the six lawyers that have been hired by

14  my law firm.  Just to note, a three-lawyer law firm is now a

15  medium-size law firm because of the engagement of lawyers

16  specifically 100 percent dedicated full-time to just helping

17  with this discovery review.  Every lawyer of which has at least

18  five years and some of them ten or more years in dealing with

19  complex discovery review cases, including one lawyer who's a

20  former now retired federal -- not Department of Justice, but

21  federal agency lawyer who did complicated financial and

22  securities document reviews.  So we've tried to reach out to

23  find very qualified people who are managed by my law firm and

24  the lawyers who are assigned to this case, and they're working

25  full-time.

1          The Court I think has some appreciation for some of

2     the lawyers who are before you, and I suggest that the Court

3     knows that the lawyers are not likely to come before you with a

4     less than full supported request for a significant continuance.

5     And in the process of getting to that, Your Honor, we wanted to

6     mention a couple of things.

7          The Court has asked about the time frame for relevant

8     documents.  As part of this document review process, although

9     it's probably not cutting edge for the government or cutting

10    edge for large law firms, we're actually using a platform that

11    helps us with artificial intelligence and predictive coding,

12    efforts to, with our clients, identify the type of material

13    that is likely to be responsive to the issues in this case.

14    Not an easy task, but one that was fully worked going forward,

15    and we tweak those algorithms and keywords regularly because

16    our clients are very much involved in the process of helping us

17    look through documents that are highlighted as potentially

18    relevant or completely excluded.

19          We have a lawyer who works with that full-time team

20    who knows about the case and is one of the lawyers on the case

21    that helps us isolate what documents seem to be more pertinent

22    than not.  And this process of filtering through to find the

23    relevant documents, yes, it's true if we could identify the

24    relevant documents tomorrow, it would take us about 15 weeks to

25    have analyzed all of the relevant documents.  Getting to the

1   relevant documents is the long part of the process.  We're not

2   seeking the amount of time that a leisurely law firm would do

3   in just having this case one of many on a docket, although it

4   is one of several on our docket, but we do have lawyers working

5   full-time.

6           We want the Court to understand that in getting to the

7   issue of what documents are important, we cross-referenced

8   government hot documents with the remainder of the documents to

9   see.  And this is where predictive coding and artificial

10  intelligent type of component.  We don't have a computer

11  telling us what's important, what's not.  But the idea of

12  helping refine our search terms; what is it in the government

13  hot documents.  And we're very appreciative the government in

14  response to the Court's suggestions gave us hot documents.

15  They've actually helped us move faster through the process to

16  get to the stage that we can get through about 20,000 documents

17  a week and with a quality control that is making certain we

18  don't have to do the job twice, and the likelihood of missing a

19  relevant document is small.

20          And without necessarily giving the Court the work

21  product we have, I have a binder that I work with and fill

22  every week on what our accomplishments have been and how that

23  review has gotten into our own version of important documents

24  and documents that we think, and I say we think, Your Honor,

25  may lead to us having a further discussion with the government.

1   Because it may very well be, we don't know this is the case,

2   but it may very well be based on what we're finding that some

3   documents that should be part of this overall 2.1 million

4   dollar (sic) volume may not be there.  And before we bother the

5   Court with things like that, we intend to put our material

6   together and talk to the government asking about certain other

7   documents that seem to be part of what we have but we can't

8   match them up.  And that's also a demonstration that we are

9   trying to be responsive to the government hot documents as well

10  as our own effort to go through documents to find what we

11  believe are helpful to the entirety of the case.  Not just the

12  prosecution of the case, but importantly the defense of the

13  case.

14          And I close, Your Honor, by simply asking you to

15  recognize that as part of this process we know that there is

16  always the reality that comes with cases that get put off too

17  far from now.  There will be no question and there should be no

18  question on Your Honor's mind that if this case is put to a

19  time that is reasonable for pretrial motions and trial prep,

20  that the lawyers will remain diligent and focus on what we

21  believe is an appropriately aggressive time frame.  So the

22  Court should have no concern that this case then becomes a

23  secondary consideration for any of the lawyers and certainly

24  the clients, all of whom have their lives at issue in this

25  case.

1        So we ask the Court to consider this to be a not

2   typical case that is being handled in a not typical manner.  We

3   think quite a new version manner of how a case like this can be

4   handled, and agree that the demands of the case and the talents

5   of the lawyers are appropriate for a trial date that is really

6   not so far away from the March 2019 indictment.  But we ask the

7   Court to consider the later part, the last quarter of 2020.

8   Not a huge amount of time extension, but enough of an extension

9   to allow us to reset the pretrial motion date and be ready for

10  trial in the last quarter of 2020.  And we have some

11  suggestions for the Court if the Court wants to hear more on

12  particular dates and dates for motion practice.

13        Thank you, Judge.

14        THE COURT:  Anything you want to add, Mr. Salter?

15        MR. SALTER:  No, Your Honor.

16        THE COURT:  Anything you want to add, Mr. Buonauro?

17        MR. BUONAURO:  Buonauro, Your Honor.  No.  No, Your

18  Honor.

19        THE COURT:  Anything you want to add, Mr. Davis?

20        MR. DAVIS:  No, Your Honor.

21        THE COURT:  Ms. Quinlan?

22        MS. VORPE-QUINLAN:  No, Your Honor.

23        THE COURT:  And I'm missing somebody.

24        MR. SHEARIN:  Mr. Shearin for Ventech.  No, Your

25  Honor.

1        THE COURT:  All right.  Before I hear from the

2   government, let me ask the defendants to again come up one at a

3   time so I can ascertain whether they agree with the strategy of

4   asking for a postponement which would toll their right to

5   speedy trial.

6        Again, your lawyers have been to law school, they've

7   tried a lot of cases, they give you the benefit of their legal

8   advice, but it's your life.  You don't have to follow the

9   advice.

10        Mr. Boccuzzi.

11        MR. SALTER:  May it please the Court.  Steve Salter.

12   James Boccuzzi is present before the Court.

13        THE COURT:  Mr. Boccuzzi, do you agree with the

14   strategy of asking me to postpone the trial which would toll

15   your right to speedy trial?

16        DEFENDANT BOCCUZZI:  Yes, Your Honor.

17        THE COURT:  Do you need any more time to think about

18   that or talk about that with your lawyer?

19        DEFENDANT BOCCUZZI:  No, Your Honor.

20        THE COURT:  Thank you, sir.

21        How about Mr. Singleman (sic)?

22        MR. LUBIN:  Present at the podium, Your Honor.

23        THE COURT:  Mr. Singleman (sic), do you agree with the

24   strategy of asking me to postpone the trial which would toll

25   your right to speedy trial?

```
1              DEFENDANT SINGERMAN:  Yes, Your Honor.

2              THE COURT:  Thank you, sir.

3              How about Mr. Braun?

4              MR. KUEHNE:  State your name.

5              DEFENDANT BRAUN:  Phillip Braun, Your Honor.

6              THE COURT:  Mr. Braun, do you agree with the strategy

7  of asking for a continuance which would toll your right to

8  speedy trial?

9              DEFENDANT BRAUN:  Yes, Your Honor.

10             THE COURT:  And do you agree with that strategy as it

11 applies to Blackstone Labs?

12             DEFENDANT BRAUN:  Yes, Your Honor.

13             THE COURT:  Let me hear from Mr. Winsauer.

14             MR. BUONAURO:  Your Honor, Robert Buonauro.

15 Mr. Winsauer is approaching.

16             THE COURT:  Mr. Winsauer, do you agree with the

17 strategy of asking for a continuance which would toll your

18 right to speedy trial?

19             DEFENDANT WINSAUER:  Yes, Your Honor.

20             THE COURT:  And you also represent Ventech?

21             DEFENDANT WINSAUER:  No.

22             MR. BUONAURO:  No, Your Honor.  He's employed by

23 Blackstone as IT man for Blackstone.

24             THE COURT:  Thank you.

25             Let me hear from Mr. Ventrella.
```

1          MS. VORPE-QUINLAN:  Nancy Quinlan.  And Mr. Ventral is

2    here, Your Honor.

3          THE COURT:  Mr. Ventrella, do you agree with the

4    strategy of asking for a continuance which would toll your

5    right to speedy trial?

6          DEFENDANT VENTRELLA:  Yes, Your Honor.

7          THE COURT:  And on behalf of Ventech do you agree with

8    that also?

9          DEFENDANT VENTRELLA:  Yes, sir.

10         THE COURT:  Okay.  Thank you.

11         Let me hear from the government as to the request for

12   a continuance of the trial date and the deadline for filing

13   defensive motions.

14         MR. READER:  Thank you, Your Honor.  For the record,

15   Alistair Reader.

16         Your Honor, the government opposed this motion for a

17   continuance for a couple of reasons.  First, I feel it's

18   important to set the record straight of particular

19   facts that --

20         MR. SALTER:  May it please the Court.  May we ask that

21   he perhaps speaks into a microphone.  He has a little bit of a

22   soft voice.  At least my hearing might be a little off.  I

23   apologize.

24         THE COURT:  Okay.

25         MR. READER:  I will restart, Your Honor.

1       Alistair Reader for the record.

2       Your Honor, the government opposed this motion for a

3  continuance for several reasons.  The first of being which is

4  important to set the factual record straight on the discovery

5  in this case, all factors that Your Honor has to take into

6  consideration on determining whether or not a continuance is

7  required by the ends of justice or the US Constitution.

8       The arguments here that the defendants put in their

9  written motion as well as argued today are extremely similar to

10 the arguments that they presented at the first motion for a

11 continuance.

12      THE COURT:  At that motion I set a deadline of

13 May 17th for discovery to be given, and not all of the

14 discovery was given by then.

15      MR. READER:  So I think that's an excellent question,

16 Your Honor.  I think it's fair to say that at May 17th the

17 government thought that all of the discovery had been

18 delivered.  You can see, Your Honor, in the attachment to our

19 opposition, our discovery index, there was huge amount of

20 discovery delivered by that date.  Since that date there have

21 been two separates sets of information that have been presented

22 separate and apart from the hot documents, which were

23 repetitive.

24      1.  It turns out that there was a technical error.

25 And I do mean a technical error made by a computer technician

1    in one of large productions that the government provided well

2    in advance of May 17th.

3           Okay.  As soon as we heard from the defendants that

4    there was an error in that production -- this is part of

5    production three which was produced to most of the defendants

6    on April 3rd and the rest -- to the other defendants

7    immediately after the original motion for continuance.  There

8    was a chunk of those documents that for purely technical

9    reasons apparently was not on the disk that was provided to

10   each of these defendants.  We heard about that sometime later

11   from Mr. Davis, who represents Blackstone Labs.  We immediately

12   went to check, and we immediately recreated that and produced

13   it first to Blackstone Labs and then inquired of all of the

14   other defendants is this a problem in your discovery as well.

15   None of the defendants answered.  We ended up sending a copy

16   anyway just to be sure.

17          THE COURT:  I mean, my question doesn't suggest that

18   the government did anything wrong.  I understand you have a

19   continuing obligation to give Brady/Giglio documents, other

20   documents.  But when I set the deadline, when I set the trial

21   date, wouldn't it have been part of that calculation that I

22   anticipated that all of the discovery would have been done my

23   May the 17th; and if it's not done by May the 17th, no matter

24   whose fault it was, doesn't that affect the calculous to the

25   trial date that I set back on May 3?

```
 1          MR. READER:  Certainly Your Honor is correct that you

 2   were expecting all of the discovery to be due by May 17th.  I

 3   think the reason that it's not prejudicial here, where there

 4   were some documents that were produced afterwards, is -- the

 5   question is what documents came late, which documents came

 6   after the discovery deadline.  And in this case all of the

 7   documents that have come to date after this discovery deadline

 8   are documents produced by Blackstone Labs.  These are corporate

 9   records that were produced to the government years before.

10          The first tranche again was electronic discovery.  And

11   there was technical error.  And the second tranche was a set

12   of -- you can call them electronic records, but they're really

13   paper records that had been scanned.  And it's the government's

14   understanding that those are entirely duplicative of the other

15   discovery.  And we know that because Blackstone Labs produced

16   those documents, was told they were unsatisfactory in terms of

17   format, and then reproduced them to the grand jury.

18          THE COURT:  I know nothing about this case, but aren't

19   all of the defendants privy to what Blackstone Labs would have

20   produced years ago?

21          MR. READER:  I can't speak for all of the defense

22   counsel.  All of the defendants were managers or owners of

23   Blackstone Labs except for Mr. Ventrella and Ventech, Your

24   Honor.

25          THE COURT:  So from his point of view, the fact that
```

```
 1   Blackstone Labs had produced all of this information years ago
 2   really wouldn't help him because he wouldn't have been privy to
 3   it.
 4            MR. READER:  Yes, I think that's a fair point, Your
 5   Honor.  And if Your Honor sees fits to extend the deadline here
 6   and the ends of justice require that, I think the government's
 7   point is is that the fact that a few records were delivered
 8   late or even a lot of records were delivered late doesn't
 9   require the better part of a year continuance.
10            I think it's fair to say that they're not reviewing
11   all of the records simultaneously.  We know that.  They've said
12   that it's 20,000 a week.  So they would not have gotten to
13   these records by the time they received them in May or June or
14   July.  I think that's fair to say, Your Honor, that these
15   documents --
16            THE COURT:  How do you know what order they're
17   reviewing them?
18            MR. READER:  We don't know, Your Honor.  I think that
19   the pleadings that they have provided suggests that the
20   documents they're reviewing first are documents produced by the
21   FDA, which I think is a strategic decision that makes a lot of
22   sense.
23            I think the government's point here is is if Your
24   Honor is going to grant a continuance, it should be a limited
25   continuance because this is a limited issue.
```

1              These defendants have received extensive discovery.  I

2    think going beyond what we're required to do.  We've indexed

3    the discovery to make it easy for them to figure out exactly

4    what they're looking at.  And then the largest tranches of

5    documents are these Blackstone Labs produced documents, many of

6    which counsel here have presumably reviewed before they were

7    produced to the government, and as a result any continuance

8    that the Court grants should be limited.  Perhaps 60 days or 90

9    days.

10             THE COURT:  Let me ask you -- I mean, it's been a long

11   time since I was a prosecutor, but this was an indictment that

12   returned in March, right?

13             MR. READER:  Yes.

14             THE COURT:  And you had a search warrant like two

15   years before that?

16             MR. READER:  That's correct.

17             THE COURT:  Why aren't all of the documents available

18   when you return the indictment?  I mean, there's -- you decided

19   when to go to the grand jury.  You decided when to get the

20   indictment.  Why are you getting an indictment when you're not

21   ready to go to trial, you're not ready to give all of the

22   documents to the defense?

23             MR. READER:  Without going into too much work product

24   discussion, Your Honor, I think that there are various

25   pressures that go into the timing of an indictment.  In this

1  case, as Your Honor knows from the pleadings, there's a

2  parallel petition for return of property.  And in the pleadings

3  in that case the government said this motion for return of

4  property, you know, should be dismissed for lack of

5  jurisdiction because an indictment is coming soon.  I think

6  that was obviously some pressure on the government, as well as

7  there is pressure that involves statute of limitations and

8  other things.

9          Without going into any details, I think it's a fair

10  question, Your Honor, the question of why all of the discovery

11  wasn't ready on the day of the indictment.  Producing this

12  information through computers can be quite slow, to imagine

13  these -- even though these discovery is on government

14  computers, to produce it in a format that's load ready for the

15  defendants takes time, and the government started that as soon

16  as it was able.  And the government may sound like it has

17  unlimited resources, but that's not true that we have unlimited

18  resource.  And the e-discovery demands in this case are

19  competing with the e-discovery demands of hundreds of other

20  cases as well in my particular division.

21          So Your Honor's questions are well put.  The

22  government feels strongly here that we've gone above and beyond

23  in discovery.  And in addition to what was motioned here, at

24  every point have we told the defendants if you have a question

25  about discovery or a problem with discovery, please call us

1  directly.  And I think my brothers will agree that we're quite

2  responsive to their calls.

3       And I should, I suppose, offer an apology to my

4  brother Mr. Lubin who felt insulted by our pleading where we

5  discussed the discovery.  The point being is that this was

6  always an e-discovery case.  Before this case was indicted it

7  was an e-discovery case.  And the volume of documents that was

8  discussed here, that is being discussed in front of the Court

9  here is the same volume of documents we were talking about, you

10 know, at the first appearances and same documents we were

11 talking about at the first motion for continuance.

12      So, Your Honor, as you are weighing the factors here,

13 as you're weighing the ends of justice and how much time these

14 defendants needs, the Department of Justice will be ready for

15 trial in January.  I would prefer not to go to trial the first

16 week after Christmas, but the Department of Justice is prepared

17 to be ready and bring this matter to an expeditious close.

18      And our position after hearing the questions here

19 today and Your Honor's concerns, if Your Honor is concerned

20 that the production of these documents after the discovery

21 deadline in any way possibly prejudiced the defendants, rather

22 than create some appellate issue, we would say grant a short

23 continuance, grant 60 days, grant 90 days, a corresponding

24 deadline for motions, and give the defense the time they need

25 to prepare without extending this case another year.

```
1              THE COURT:  I mean, I don't necessarily rule on
2    motions based on whether they're going to engender an appellate
3    issue.  I mean, absent my continuing the case until the last
4    quarter of 2020, my guess is that there could be an appellate
5    issue regarding my ruling in this case.  And, who knows, even
6    then there might be an appellate issue.  So, I mean, I have to
7    do what I think is fair to the defendants and fair to the
8    government.
9              I think that justice delayed is justice denied both
10   for the defendants and for the government.  So I think there's
11   a happy balance that the Court has to reach so that it's
12   comfortable that the fine defense attorneys in this case can
13   have the tools to advise their clients whether to go to trial
14   or not and to defend them should they continue with their
15   decision to rely on the presumption of innocence.
16             So I'm thinking that a four-month continuance is
17   appropriate in this case.  If we do that, what's everybody's
18   availability in May?
19             MR. READER:  Could I add one more fact to the record,
20   Your Honor?
21             THE COURT:  Okay.
22             MR. READER:  Because I think it's important to Your
23   Honor's decision.
24             I think the government's interest here in making sure
25   we have a date certain for trial that's of value to the
```

```
1    witnesses, that's of valuable for the --
2              THE COURT:  No such thing.
3              MR. READER:  No such thing.  Thank you, Your Honor.
4              THE COURT:  But I would like to pick a date, if I can,
5    that there isn't any obvious conflict for any of the lawyers or
6    the defendants in the case if we can.  It doesn't mean that
7    that conflict won't come about later on.  But if at least we
8    can pick a date now that seems to be approachable or doable for
9    everybody, then I'm happy to try to do that.
10             MR. READER:  And I think the point I was trying to
11   make, Your Honor, is that we -- in our opposition we mentioned
12   that there are going to be more documents here.  We have
13   completed the documents that we have available, but there are a
14   few more documents here and I want to make sure that everyone
15   understands that and Your Honor understands that.
16             THE COURT:  Get them out as soon as you can because if
17   I become convinced that you've held back on documents that
18   should have been disclosed and that the defendants are
19   prejudiced by it, then I may exclude that testimony in the
20   government's case in chief.
21             MR. READER:  Very well, Your Honor.  The documents in
22   question are documents that were recently reviewed for
23   privilege and found to be not privileged, a small group of
24   documents involving the FDA, documents involving Mr. Dimaggio
25   who you've heard about today, and any future Brady or Giglio
```

1   documents that we identify.  There should be a very limited

2   pool of documents.

3           THE COURT:  Okay.  So the first week of the two-week

4   pool in May is May 11th.

5           How is May 11th for everybody?

6           MR. LUBIN:  If I might on behalf of Mr. Singerman.  I

7   believe that I'm going to be coming off, probably off but just

8   coming off a major trial across the hallway.  I believe it's

9   going to be -- that the ask from both the government and the

10  defense has been for April.

11          I would request June instead of May, if it's at all

12  possible, so that I can catch my breath and get back onto this

13  thing.  So I recognize you're not going to give us October, but

14  I would request June rather than May on behalf of

15  Mr. Singerman.

16          THE COURT:  Let me ask you, Mr. Lubin, the trial

17  you're talking about is with Judge Ruiz?

18          MR. LUBIN:  Yes.

19          THE COURT:  And has he set a trial date?

20          MR. LUBIN:  There's a pending trial date, but there's

21  been a motion to continue, an agreed motion to continue pending

22  for I think two weeks now, about two weeks.  It's another case

23  with the DOJ.

24          THE COURT:  But he hasn't ruled on it?

25          MR. LUBIN:  No, he has not ruled on it.

1          THE COURT:  Your beef is going to be with him if I

2    pick a date that's not good for you.

3          MR. LUBIN:  All right.

4          THE COURT:  Yes, let me hear from Mr. Salter.

5          MR. SALTER:  May it please the Court.  On behalf of

6    Defendant Boccuzzi, my wife has us going out of the country the

7    latter part of May.  But I will be where I am supposed to be if

8    the Court orders me to be here.  If I had my druthers, June

9    would be more preferable, but that is on a personal note.

10          THE COURT:  Let me hear from Mr. Kuehne.

11          MR. KUEHNE:  Your Honor, I will clear the decks for

12    May if that's the Court's preference.  I do believe June might

13    be a little better.  Just to let you know that my family

14    vacation with my two granddaughters has already been scheduled,

15    and we booked the rooms at one of the national parks for the

16    29th of May through the 5th of June, so that one week.  And I,

17    obviously, would be here if I have to be.  But I would prefer

18    to be able to make my family vacation.

19          THE COURT:  Let me hear from Mr. Buonauro.

20          MR. BUONAURO:  Your Honor, as it stands right now, my

21    wife hasn't told me where I have to be in May, so I'm good.

22          THE COURT:  How about Mr. Davis?

23          MR. DAVIS:  No scheduling conflict, Your Honor.

24          THE COURT:  And Mr. Shearin?

25          MR. SHEARIN:  April would not be good because my wife

1    has told me where I have to be in April.  But the latter part

2    of May would be better.  June would be preferable, but I can

3    make myself available in May.

4             THE COURT:  How about Ms. Quinlan?

5             MS. VORPE-QUINLAN:  Your Honor, I can be here in May

6    or June.  June would probably be better because school is out,

7    but that's all I would have.

8             THE COURT:  And how about the government's

9    availability for May?

10            MR. READER:  No objection, Your Honor.

11            THE COURT:  Did I miss anybody?

12            All right.  So I'm going to go ahead and set the trial

13   for May 11 at 9 o'clock in the morning, with a calendar call on

14   May the 8th at 9 o'clock in the morning.

15            MR. SHEARIN:  When was the calendar call, Your Honor?

16            THE COURT:  May 8th at 9 o'clock in the morning.

17            MR. SHEARIN:  Thank you.

18            THE COURT:  And defensive motions, let's have them

19   filed by -- how's January 17th?

20            Not hearing any objection, defensive motions by

21   January 17th.

22            Anything else we need to discuss?

23            MR. READER:  Your Honor mentioned an expert disclosure

24   deadline.  We disclosed most of the experts already.  Did Your

25   Honor intend to set a deadline for that or we'll just do it as

1    soon as we can?

2           THE COURT:  I mean, if you all agree on a deadline for

3    experts to be disclosed or rebuttal experts to be disclosed, I

4    will be more than happy to sign an agreed order.

5           MR. READER:  We'll discuss that with the defense then.

6           THE COURT:  Absent there being a perceived need for

7    such an order, I'm not inclined to have to unilaterally enter

8    it.

9           Anything else we need to discuss?

10          MR. LUBIN:  No.

11          MR. KUEHNE:  No, Your Honor.

12          THE COURT:  Thanks for coming in.

13          MR. BARDFELD:  I won't be in anymore hearings, Your

14   Honor.

15       (Proceedings concluded at 2:40 p.m.)

16

17                    C E R T I F I C A T E

18       I, Karl Shires, Registered Merit Reporter and Federal

19   Certified Realtime Reporter, certify that the foregoing is a

20   correct transcript from the record of proceedings in the

21   above-entitled matter.

22       Dated this 19th day of August, 2019.

23

24   _____
     Karl Shires, RMR FCRR

25

DEFENDANT
BOCCUZZI: [4]  8/24
9/2 25/15 25/18
DEFENDANT
BRAUN: [8]  9/15 9/18
9/21 9/24 10/2 26/4
26/8 26/11
DEFENDANT
SINGERMAN: [3]  9/8
9/11 25/25
DEFENDANT
VENTRELLA: [6]
10/20 10/23 11/1 11/4
27/5 27/8
DEFENDANT
WINSAUER: [4]  10/9
10/12 26/18 26/20
MR. BARDFELD: [3]
3/9 4/21 40/12
MR. BUONAURO: [8]
3/16 4/3 7/10 10/5
24/16 26/13 26/21
38/19
MR. DAVIS: [5]  3/18
4/8 7/17 24/19 38/22
MR. KUEHNE: [7]
3/14 6/11 9/14 20/7
26/3 38/10 40/10
MR. LUBIN: [19]  3/12
5/19 7/4 7/7 9/5 12/8
13/2 14/17 14/22 16/1
18/22 19/2 25/21 37/5
38/2 40/9
MR. READER: [23]
3/6 6/1 11/13 12/12
19/1 27/13 27/24
28/14 29/25 30/20
31/3 31/17 32/12
32/15 32/22 35/18
35/21 36/2 36/9 36/20
39/9 39/22 40/4
MR. SALTER: [8]  3/5
3/10 6/24 8/20 24/14
25/10 27/19 38/4
MR. SHEARIN: [7]
3/20 4/6 7/19 24/23
38/24 39/14 39/16
MR. WILLIAMS: [7]
7/22 11/7 11/21 11/25
12/2 12/4 12/19
MS. MORSE: [1]  5/25
MS.
VORPE-QUINLAN: [7]
3/22 3/25 7/14 10/15
24/21 26/25 39/4
THE COURT: [104]

$

$30,000 [2]  14/12 17/8

-

-v [1]  1/6

100 [3]  1/19 2/11
14/21
100 percent [1]  20/16
102 [1]  14/23
11 [1]  39/13
11th [2]  37/4 37/5
12 [1]  1/10
1217 [1]  1/22
130,000 [3]  15/13
15/14 15/18
130-some-odd-thousa
nd [1]  15/11
1499 [1]  2/13
15 [4]  15/7 15/19 16/1
21/24
15 percent [2]  15/21
15/23
15-minute [1]  5/14
16 percent [2]  15/7
15/19
17,000 [1]  14/14
17th [10]  18/22 18/24
28/13 28/16 29/2
29/23 29/23 30/2
39/19 39/21
18 [1]  19/15
19-CR-80030-DIMITR
OULEAS [1]  1/2
19th [1]  40/22
1:30 [1]  1/11
1:34 [1]  5/15

2

2.1 [1]  15/17
2.1 million [3]  14/18
15/22 23/3
20,000 [3]  14/15 22/16
31/12
2019 [3]  1/10 24/6
40/22
2020 [3]  24/7 24/10
35/4
203G [1]  1/24
20530 [1]  1/17
212 [1]  2/14
250 [1]  13/24
299 [1]  1/24
29th [1]  38/16
2:40 [1]  40/15
2nd [2]  1/19 2/11

3

30 [1]  18/14
300 [1]  15/23
3161 [1]  19/15
32804 [1]  2/9
33131 [2]  1/20 2/12
33301 [2]  1/25 2/3
33401 [2]  1/22 2/5
33486 [1]  2/14
350,000 [1]  15/23
3550 [2]  1/19 2/11
36542 [1]  2/7
3rd [2]  2/2 29/6

40 [1]  14/1
45 [1]  17/17
450 [1]  1/17

5

500 [1]  13/24
515 [1]  2/5
5496 [1]  1/24
5th [1]  38/16

6

60 [2]  32/8 34/23
633 [1]  2/2
6th [2]  12/21 18/9

7

701 [1]  2/5
722 [1]  2/9
769-5496 [1]  1/24

8

8975 [1]  2/7
8th [2]  39/14 39/16

9

9 o'clock [3]  39/13
39/14 39/16
90 [2]  32/8 34/23
93 [1]  4/14
94-year-old [1]  4/14
954 [1]  1/24

A

AARON [2]  1/7 3/14
able [3]  18/9 33/16
38/18
above-entitled [1]
40/21
absent [3]  6/22 35/3
40/6
abundance [1]  6/15
accomplishments [1]
22/22
account [1]  17/9
accused [1]  17/18
Act [2]  19/13 20/4
actions [1]  16/22
add [4]  24/14 24/16
24/19 35/19
addition [2]  14/4
33/23
additional [1]  6/23
addressed [3]  18/23
20/1 20/2
admitted [1]  17/22
advance [1]  29/2
adversary [1]  18/7
advice [3]  8/13 25/8
25/9
advise [2]  6/13 35/13
affect [4]  16/5 16/6
16/7 29/24
afford [1]  14/13
afternoon [6]  3/7 3/10
3/23 4/25 6/1 20/8

agency [1]  16/24
agents [1]  16/24
aggressive [1]  23/21
ago [5]  15/10 30/20
31/1
agree [18]  9/1 9/10
9/20 10/2 10/11 10/22
11/3 24/4 25/3 25/13
25/23 26/6 26/10
26/16 27/3 27/7 34/1
40/2
agreed [2]  37/21 40/4
ahead [1]  39/12
Alabama [2]  2/7 3/12
algorithms [1]  21/15
ALISTAIR [5]  1/16 3/7
6/2 27/15 28/1
allegedly [1]  5/11
allow [1]  24/9
altogether [1]  14/17
amateurs [1]  14/8
AMERICA [1]  1/4
amount [4]  11/18 22/2
24/8 28/19
AMY [2]  1/21 5/23
analyzed [1]  21/25
announce [1]  3/4
answer [5]  17/12
17/13 19/7 19/20
19/22
answered [1]  29/15
ANTHONY [1]  1/7
3/24
anticipated [1]  29/22
anybody [3]  7/22 8/7
39/11
anymore [1]  40/13
anyway [2]  17/3 29/16
apart [1]  28/22
apologize [1]  27/23
apology [1]  34/3
apparently [1]  29/9
appearance [2]  8/3
8/4
appearances [4]  1/15
2/1 3/4 34/10
appellate [4]  34/22
35/2 35/4 35/6
Apple [1]  13/23
applies [1]  26/11
appreciate [1]  15/8
appreciation [1]  21/1
appreciative [1]  22/13
approach [1]  20/9
approachable [1]  36/8
approaching [2]
10/17 26/15
appropriate [2]  24/5
35/17
appropriately [1]
23/21
approximately [1]
14/14
April [4]  29/6 37/10
38/25 39/1
April 3rd [1]  29/6

arguably [1]  28/9
arguments [2]  28/8
28/10
art [1]  14/11
artificial [2]  21/11
22/9
ascertain [1]  25/3
aside [1]  4/20
asked [3]  4/24 17/22
21/7
asking [15]  8/2 9/2
9/11 9/21 10/12 10/23
16/13 23/6 23/14 25/4
25/14 25/24 26/7
26/17 27/4
assign [1]  6/18
assigned [1]  20/24
assuming [2]  15/9
15/21
attachment [1]  28/18
attitude [1]  16/9
Attorney [1]  5/7
Attorney's [1]  5/9
attorneys [1]  35/12
August [1]  1/10 40/22
AUSA [1]  3/8
availability [1]  35/18
39/9
available [4]  16/19
32/17 36/13 39/3
Avenue [1]  2/2

B

back [4]  5/17 29/25
36/17 37/12
balance [1]  35/11
Bardfeld [6]  3/9 4/12
4/13 5/3 6/3 6/9
based [4]  15/21 16/21
23/2 35/2
basis [1]  6/23
Beach [2]  1/22 2/5
beef [1]  38/1
began [1]  13/16
behalf [16]  3/13 3/20
3/21 3/24 6/25 7/11
7/15 7/24 10/1 10/16
11/3 13/4 27/7 37/6
37/14 38/5
believe [6]  19/23
23/11 23/21 37/7 37/8
38/12
Ben [1]  3/15
BENEDICT [1]  1/19
benefit [3]  8/13 13/19
25/7
best [1]  15/20
better [4]  31/9 38/13
39/2 39/6
beyond [2]  32/2 33/22
binder [1]  22/21
bit [2]  14/25 27/21
BLACKSTONE [17]
1/8 2/11 3/20 7/17
9/24 10/1 26/11 26/23
26/23 29/11 29/13

## B

**BLACKSTONE... [6]**
30/8 30/15 30/19
30/23 31/1 32/5
**Blackstone's [1]** 4/9
**Boca [1]** 2/14
**BOCCUZZI [15]** 1/8
2/7 3/3 3/12 4/5 6/24
7/1 8/19 8/22 8/22
8/23 25/10 25/12
25/13 38/6
**booked [1]** 38/15
**borne [1]** 14/12
**bother [1]** 23/4
**Boulevard [1]** 1/24
**Brady [2]** 29/19 36/25
**Brady/Giglio [1]** 29/19
**BRAUN [12]** 1/7 1/19
3/16 6/12 7/7 7/8 9/14
9/16 9/17 26/3 26/5
26/6
**breath [1]** 37/12
**bring [1]** 34/17
**bringing [1]** 8/1
**brother [1]** 34/4
**brothers [1]** 34/1
**Broward [1]** 1/22
**BUONAURO [8]** 2/8
3/17 7/12 10/6 24/16
24/17 26/14 38/19
**burden [1]** 17/3

## C

**calculation [1]** 29/21
**calculous [1]** 29/24
**calendar [5]** 12/22
12/24 18/8 39/13
39/15
**call [9]** 3/1 5/16 12/22
12/24 18/8 30/12
33/25 39/13 39/15
**calls [1]** 34/2
**case [69]**
**cases [7]** 8/11 8/12
12/16 20/19 23/16
25/7 33/20
**catch [1]** 37/12
**caution [1]** 6/15
**certain [4]** 11/18
22/17 23/6 35/25
**certainly [3]** 6/7 23/23
30/1
**Certified [1]** 40/19
**certify [1]** 40/19
**challenge [2]** 18/3
18/10
**chargeable [1]** 19/14
**charges [1]** 5/11
**check [1]** 29/12
**chief [1]** 36/20
**Christmas [1]** 34/16
**chunk [1]** 29/8
**cite [1]** 19/15
**clear [1]** 38/11
**clearly [1]** 19/11
**Clerk [1]** 6/18

---

**clients [5]** 17/8 21/21
21/16 23/24 35/13
34/17
**close [3]** 17/5 23/14
34/17
**co-counsel [2]** 5/23
6/4
**code [1]** 15/3
**coding [2]** 21/11 22/9
**combine [1]** 13/6
**come [7]** 6/5 6/14 8/19
21/3 25/2 30/7 36/7
**comes [1]** 23/16
**comfortable [2]** 4/19
35/12
**coming [4]** 33/5 37/7
37/8 40/12
**committing [1]** 5/5
**companies [1]** 13/17
**compared [1]** 15/17
**competing [1]** 33/19
**completed [1]** 36/13
**completely [1]** 21/18
**complex [3]** 17/24
19/25 20/19
**complicated [1]** 20/21
**component [1]** 22/10
**computations [1]**
14/19
**computed [1]** 15/20
**computer [2]** 22/10
28/25
**computers [2]** 33/12
33/14
**conceivably [1]** 6/9
**concern [3]** 5/12 20/4
23/22
**concerned [1]** 34/19
**concerns [2]** 19/11
34/19
**concluded [1]** 40/15
**concur [1]** 8/2
**conducting [1]** 4/13
**conflict [3]** 36/5 36/7
38/23
**consider [2]** 24/1 24/7
**consideration [2]**
23/23 28/6
**Constitution [1]** 28/7
**continuance [24]**
11/15 12/16 16/11
18/17 19/13 19/16
20/12 21/4 26/7 26/17
27/4 27/12 27/17 28/3
28/6 28/11 29/7 31/9
31/24 31/25 32/7
34/11 34/23 35/16
**continuation [1]**
19/18
**continue [6]** 1/12 4/12
13/2 35/14 37/21
37/21
**Continued [1]** 2/1
**continuing [3]** 7/2
29/19 35/3
**control [1]** 22/17
**convinced [1]** 36/17

---

**clients' [1]** 21/21
**corporate [7]** 4/7 4/9
8/1 8/15 9/23 10/25
30/8
**corporations' [1]** 8/14
**correct [4]** 12/13 30/1
32/16 40/20
**corresponding [1]**
34/23
**counsel [9]** 3/4 4/24
5/3 5/17 5/23 6/4 14/4
30/22 32/6
**country [1]** 38/6
**couple [2]** 21/6 27/17
**course [1]** 16/17
**court [43]**
**Court's [4]** 6/14 15/12
22/14 38/12
**CR [1]** 1/2
**create [1]** 34/22
**criminal [2]** 5/6 5/10
**criteria [3]** 19/12
19/12 20/5
**cross [2]** 16/7 22/7
**cross-examination [1]**
16/7
**cross-referenced [1]**
22/7
**cutting [2]** 21/9 21/9

## D

**date [17]** 12/22 12/25
18/23 24/5 24/9 27/12
28/20 28/20 29/21
29/25 30/7 35/25 36/4
36/8 37/19 37/20 38/2
**Dated [1]** 40/22
**dates [2]** 24/12 24/12
**Dave [1]** 3/18
**DAVID [1]** 1/8
**DAVIS [7]** 1/18 2/10
2/11 3/19 24/19 29/11
38/22
**day [4]** 8/16 12/5
33/11 40/22
**days [6]** 12/3 18/14
32/8 32/9 34/23 34/23
**DC [2]** 1/17 4/24
**deadline [14]** 15/10
15/12 18/25 27/12
28/12 29/20 30/6 30/7
31/5 34/21 34/24
39/24 39/25 40/2
**deadlines [2]** 18/18
18/18
**deal [1]** 18/12
**dealing [1]** 20/18
**December [3]** 12/19
12/22 18/9
**decide [1]** 5/12
**decided [2]** 32/18
32/19
**decision [5]** 8/2 16/17
31/21 35/15 35/23
**decks [1]** 38/11
**dedicated [1]** 20/16

---

**defendant [15]** 1/18
1/21 2/2 2/4 2/6 2/8
2/10 2/13 3/12 7/1 8/1
8/16 8/18 8/22 38/6
**defendants [28]** 1/10
1/18 6/21 7/20 8/13
12/17 13/1 14/12 18/3
25/2 28/8 29/3 29/5
29/6 29/10 29/14
29/15 30/19 30/22
32/1 33/15 33/24
34/14 34/21 35/7
35/10 36/6 36/18
**defendants' [1]** 8/14
**defense [12]** 5/20
14/4 16/5 18/21 19/24
23/12 30/21 32/22
34/24 35/12 37/10
40/5
**defensive [3]** 27/13
39/18 39/20
**delay [1]** 19/13
**delayed [1]** 35/9
**delivered [4]** 28/18
28/20 31/7 31/8
**demands [2]** 24/4
33/18 33/19
**demonstration [1]**
23/8
**denied [1]** 35/9
**DEPARTMENT [5]**
1/16 3/8 20/20 34/14
34/16
**designate [1]** 17/23
**detail [1]** 20/1
**details [1]** 33/9
**determining [1]** 28/6
**didn't [1]** 11/15
**diligent [1]** 23/20
**Dimaggio [11]** 2/2
7/23 11/7 11/8 11/14
11/18 12/7 12/18
12/24 13/5 36/24
**DIMITROULEAS [3]**
1/2 1/13 3/15
**directly [1]** 34/1
**disclose [1]** 5/6
**disclosed [5]** 19/4
36/18 39/24 40/3 40/3
**disclosure [7]** 4/16
5/19 6/11 6/14 8/10
19/1 39/23
**discovery [34]** 13/18
14/5 14/9 15/9 15/11
16/3 20/17 20/19 28/4
28/13 28/14 28/17
28/19 28/20 29/14
29/22 30/2 30/6 30/7
30/10 30/15 32/1 32/3
33/10 33/13 33/18
33/19 33/23 33/25
33/25 34/5 34/6 34/7
34/20
**discuss [4]** 8/17 39/22
40/5 40/9

---

**discussed [3]** 33/4
34/8 34/8
**discussion [2]** 22/25
32/24
**disk [1]** 29/9
**dismiss [1]** 16/6
**dismissed [1]** 33/4
**disqualification [1]**
6/23
**disqualify [3]** 5/13
6/22 11/20
**DISTRICT [4]** 1/1 1/1
1/14 5/7
**division [1]** 33/20
**doable [1]** 36/8
**docket [2]** 22/3 22/4
**document [4]** 14/16
20/22 21/8 22/19
**documents [58]**
**doing [10]** 7/25 13/14
14/9 14/24 17/16
17/17 17/18 17/19
17/20 19/20
**DOJ [1]** 37/23
**dollar [1]** 23/4
**dollars [1]** 14/1
**Drive [1]** 2/5
**druthers [1]** 38/8
**due [2]** 13/9 30/2
**dumped [1]** 15/14
**duplicative [1]** 30/14

## E

**e-discovery [8]** 13/18
14/5 14/9 16/3 33/18
33/19 34/6 34/7
**earlier [1]** 12/6
**East [1]** 1/24
**easy [2]** 21/14 32/3
**edge [1]** 21/9 21/10
**effectively [2]** 18/10
18/20
**effort [1]** 23/10
**efforts [1]** 21/12
**either [1]** 11/25 17/20
**electronic [3]** 14/5
30/10 30/12
**employed [1]** 17/2
26/22
**ended [1]** 29/15
**ends [3]** 28/7 31/6
34/13
**engagement [1]** 20/15
**engender [1]** 35/2
**enter [1]** 40/7
**entered [1]** 8/9
**entirely [1]** 30/14
**entirety [1]** 23/11
**entitled [1]** 40/21
**error [4]** 28/24 28/25
29/4 30/11
**ESQ [9]** 1/19 1/21
1/21 2/2 2/4 2/6 2/8
2/11 2/13
**essence [1]** 18/6
**everybody [4]** 6/16

**E**

everybody... [3] 6/19 36/9 37/5
everybody's [1] 35/17
exactly [2] 18/2 32/3
examination [1] 16/7
excellent [1] 28/15
exclude [1] 36/19
excluded [1] 21/18
existence [1] 8/14
expecting [1] 30/2
expeditious [1] 34/17
expeditiously [1] 15/4
expense [1] 17/1
experienced [1] 17/15
expert [3] 18/25 19/5 39/23
experts [6] 16/24 17/10 18/18 39/24 40/3 40/3
extend [1] 31/5
extending [1] 34/25
extension [2] 24/8 24/8
extensive [1] 32/1
extra [1] 15/18
extremely [1] 28/9

**F**

fact [4] 5/9 30/25 31/7 35/19
factors [2] 28/5 34/12
facts [1] 27/19
facts that [1] 27/19
factual [1] 28/4
failure [2] 19/16 19/22
fair [7] 28/16 31/4 31/10 31/14 33/9 35/7 35/7
family [2] 38/13 38/18
far [2] 23/17 24/6
faster [1] 22/15
fault [1] 29/24
FCRR [2] 1/23 40/24
FDA [2] 31/21 36/24
federal [3] 20/20 20/21 40/18
feel [3] 5/20 18/16 27/17
feels [2] 5/9 33/22
felt [1] 34/4
Fifth [1] 1/17
figure [2] 16/4 32/3
file [3] 11/19 11/23 15/5
filed [4] 13/9 18/22 20/3 39/19
filing [1] 27/12
fill [1] 22/21
filtering [1] 21/22
finally [2] 11/7 19/9
financial [2] 8/4 20/21
find [6] 16/2 17/11 18/13 20/23 21/22 23/10
finding [1] 23/2

fine [3] 6/22 16/9 17/19 35/12
firm [5] 20/14 20/14 20/15 20/23 22/2
firms [1] 21/10
first [14] 5/23 13/15 14/9 20/2 27/17 28/3 28/10 29/13 30/10 31/20 34/10 34/11 34/15 37/3
fits [1] 31/5
five [1] 20/18
Flagler [2] 1/22 2/5
FLORIDA [11] 1/1 1/10 1/20 1/22 1/25 2/3 2/5 2/9 2/12 2/14 5/7
focus [1] 23/20
follow [1] 25/8
for the [1] 36/1
foregoing [1] 40/19
format [3] 14/5 30/17 33/14
former [1] 20/20
Fort [3] 1/10 1/25 2/3
forth [1] 16/23
forward [2] 18/16 21/14
found [1] 36/23
four [1] 35/16
four-month [1] 35/16
frame [2] 21/7 23/21
Frank [1] 4/24
fraud [2] 4/15 5/5
front [1] 34/8
full [7] 14/4 15/9 20/16 20/25 21/4 21/19 22/5
full-time [5] 14/4 20/16 20/25 21/19 22/5
fully [1] 21/14
further [1] 22/25
future [1] 36/25

**G**

getting [4] 21/5 21/25 22/6 32/20
Giglio [2] 29/19 36/25
give [7] 11/18 16/14 25/7 29/19 32/21 34/24 37/13
given [7] 4/15 8/13 15/9 19/4 19/4 28/13 28/14
giving [1] 22/20
go [11] 13/13 14/21 18/8 18/16 23/10 32/19 32/21 32/25 34/15 35/13 39/12
going [32] 4/16 8/5 8/7 8/8 8/16 11/19 12/15 12/18 13/6 13/13 13/18 13/18 14/13 15/4 16/5 17/9 17/10 18/9 19/19 21/14 31/24 32/2

half [2] 16/21 16/24
hallway [1] 37/8
handle [1] 15/6
handled [2] 24/2 24/4
happy [4] 5/1 35/11 36/9 40/4
hard [3] 13/12 13/13 14/10
hear [10] 9/14 13/1 24/11 25/1 26/13 26/25 27/11 38/4 38/10 38/19
heard [2] 29/3 29/10 36/25
hearing [5] 11/12 18/6 27/22 34/18 39/20
hearings [1] 40/13
held [1] 36/17
help [1] 31/2
helped [1] 22/15
helpful [1] 23/11
helping [3] 20/16 21/16 22/12
helps [2] 21/11 21/21

hired [2] 14/4 20/13
hits [1] 15/24
holds [1] 15/23
Honor [91]
Honor's [4] 23/18 33/21 34/19 35/23
HONORABLE [1] 1/13
hope [1] 18/17
hoping [2] 14/14 16/16
host [1] 13/17
hot [5] 22/8 22/13 22/14 23/9 28/22
how's [1] 39/19
huge [2] 24/8 28/19
hundred [1] 14/24
hundreds [1] 33/19

**I**

I'll [3] 5/12 19/7 19/15
I'm [16] 12/9 12/15 12/18 13/6 13/13 15/9 17/19 18/10 18/11 24/23 35/16 36/9 37/7 38/21 39/12 40/7
I've [1] 17/17
IBM [1] 13/23
idea [1] 22/11
identify [3] 21/12 21/23 37/1
identity [1] 4/15
imagine [1] 33/12
immediately [3] 29/7 29/11 29/12
impact [1] 6/10
implication [2] 13/11 13/12
imply [1] 17/15
important [6] 22/7 22/11 22/23 27/18 28/4 35/22
importantly [1] 23/12
impossible [1] 19/18
impropriety [1] 8/3
in-laws [6] 4/14 4/14 4/17 5/5 5/11 6/10
in-laws' [1] 8/7
inclined [2] 6/22 40/7
including [1] 20/19
incompetently [1] 17/18
incorrect [1] 13/12
index [1] 28/19
indexed [1] 32/2
indicted [1] 34/6
indictment [8] 24/6 32/11 32/18 32/20 32/20 32/25 33/5 33/11
individual [1] 5/4
individually [1] 8/2
individuals [1] 5/4
information [3] 28/21 31/1 33/12
innocence [1] 35/15

inquired [1] 29/13
insult [1] 14/7
insulted [1] 34/4
intelligence [1] 21/11
intelligent [1] 22/10
intend [2] 18/16 23/5 39/25
intention [1] 5/2
interest [2] 8/4 35/24
interviewing [1] 13/16
interviews [1] 16/22
introduce [2] 5/23 5/24
investigating [1] 5/10
investigation [3] 4/13 5/4 17/10
involved [6] 4/12 4/23 5/3 5/7 6/9 21/16
involves [1] 33/7
involving [2] 36/24 36/24
irrelevant [2] 15/8 15/19
isolate [1] 21/21
issue [10] 5/21 6/13 8/17 22/7 23/24 31/25 34/22 35/3 35/5 35/6
issues [1] 21/13
it's [26] 5/2 6/21 8/9 8/14 14/9 15/7 15/18 15/21 18/24 21/9 21/23 25/8 27/17 28/16 29/23 30/3 30/13 31/10 31/12 32/10 33/9 35/11 35/22 37/8 37/11 37/22

**J**

jail [1] 8/16
JAMES [5] 1/8 3/3 3/12 8/22 25/12
January [7] 12/20 12/21 18/8 18/9 34/15 39/19 39/21
January 17th [2] 39/19 39/21
January 6th [2] 12/21 18/9
JAY [1] 1/7
job [1] 22/18
joined [1] 16/11
joining [1] 20/12
judge [13] 1/14 3/15 4/21 6/1 6/19 7/23 8/6 11/8 11/22 12/1 16/18 24/13 37/17
July [1] 31/14
June [9] 31/13 37/11 37/14 38/8 38/12 38/16 39/2 39/6 39/6
jurisdiction [1] 33/5
jury [3] 16/23 30/17 32/19
justice [12] 1/16 3/8

justice... [10] 19/21
19/23 20/20 28/7 31/6
34/13 34/14 34/16
35/9 35/9

**K**

key [1] 15/3
keywords [1] 21/15
kidding [1] 18/10
kind [2] 13/6 16/15
knew [2] 13/17 13/22
know [30] 5/12 6/8 8/6
8/6 8/8 14/25 15/2
15/3 15/20 16/3 16/12
16/15 16/20 16/22
17/12 17/14 17/15
18/5 18/11 18/15 23/1
23/15 30/15 30/18
31/11 31/16 31/18
33/4 34/10 38/13
knowing [1] 17/18
knows [5] 16/24 21/3
21/20 33/1 35/5
KUEHNE [1] 1/18 1/19
2/10 3/15 17/13 20/7
38/10

**L**

LABS [20] 1/8 1/9
2/11 2/13 3/20 3/22
7/17 9/24 10/1 11/1
11/3 26/11 29/11
29/13 30/8 30/15
30/19 30/23 31/1 32/5
lack [1] 33/4
laid [1] 14/19
large [2] 21/10 29/1
largest [1] 32/4
Larry [1] 3/8
late [3] 30/5 31/8 31/8
Lauderdale [3] 1/10
1/25 2/3
law [11] 1/18 2/10
8/12 14/9 20/14 20/14
20/15 20/23 21/10
22/2 25/6
laws [6] 4/14 4/14
4/17 5/5 5/11 6/10
laws' [1] 8/7
lawyer [12] 8/18 8/24
9/8 9/18 10/9 10/20
20/14 20/17 20/19
20/21 21/19 25/18
lawyers [23] 8/11 8/15
13/16 14/4 16/25
17/13 17/16 17/19
20/10 20/11 20/11
20/13 20/15 20/24
21/2 21/3 21/20 22/4
23/20 23/23 24/5 25/6
36/5
lead [1] 22/25
leave [3] 5/8 12/18
12/24
legal [2] 8/13 25/7

leisure... [1] 21/2
life [1] 25/8
likelihood [1] 22/18
likewise [1] 18/19
limitations [1] 33/7
limited [4] 31/24
31/25 32/8 37/1
little [4] 14/25 27/21
27/22 38/13
live [1] 6/10
lives [2] 8/14 23/24
LLC [4] 1/8 1/9 2/11
2/13
load [1] 33/14
local [1] 3/9
long [4] 15/17 16/14
22/1 32/10
longer [1] 16/13
look [2] 18/4 21/17
looking [2] 15/23 32/4
Lord [1] 16/24
lose [1] 19/19
lot [7] 8/12 16/13
18/12 18/13 25/7 31/8
31/21
LUBIN [5] 1/21 3/13
13/3 34/4 37/16

**M**

major [1] 37/8
making [3] 5/21 22/17
35/24
man [1] 26/23
manageable [1] 14/6
managed [1] 20/23
managers [1] 30/22
manner [2] 24/2 24/3
March [2] 24/6 32/12
March 2019 [1] 24/6
massive [2] 16/12
17/5
match [1] 23/8
material [2] 21/12
23/5
matter [4] 7/2 29/23
34/17 40/21
May 11 [1] 39/13
May 11th [2] 37/4 37/5
May 17th [4] 28/13
28/16 29/2 30/2
May 3 [1] 29/25
mean [13] 6/16 13/21
15/12 19/19 28/25
29/17 32/10 32/18
35/1 35/3 35/6 36/6
40/2
meant [1] 12/22
medium [1] 20/15
medium-size [1]
20/15
meet [3] 18/20 19/12
20/5
mention [2] 4/5 21/6
mentioned [2] 36/11
39/23
Merit [1] 40/18

MICHAEL [2] 2/11
3/19
microphone [1] 27/21
million [5] 14/1 14/18
15/17 15/22 23/3
mind [1] 23/18
minimum [1] 16/21
minute [1] 5/14
miscarriage [2] 19/21
19/23
missing [2] 22/18
24/23
money [1] 18/12
month [4] 14/12 15/10
17/8 35/16
morning [5] 3/13 3/19
39/13 39/14 39/16
Morris [1] 5/23
MORSE [1] 1/21
motion [21] 1/12 4/11
13/8 13/20 14/19 16/6
16/6 18/24 19/10 24/9
24/17 27/16 28/22 28/9
28/10 28/12 29/7 33/3
34/11 37/21 37/21
motioned [1] 33/23
motions [12] 5/21
13/2 15/15 15/24 18/18
18/21 23/19 27/13
34/24 35/2 39/18
39/20
move [2] 11/19 22/15
moved [2] 16/11
18/19
Mr [7] 4/1 7/7 10/15
24/14 24/16 24/19
34/4
Mr. [67]
Mr. Bardfeld [5] 4/12
4/13 5/3 6/3 6/9
Mr. Boccuzzi [7] 4/5
6/24 8/19 8/22 8/23
25/10 25/13
Mr. Braun [6] 6/12 7/8
9/14 9/17 26/3 26/6
Mr. Buonauro [1]
38/19
Mr. Davis [2] 29/11
38/22
Mr. Dimaggio [10]
7/23 11/7 11/8 11/14
11/18 12/7 12/18
12/24 13/5 36/4 36/6
Mr. Frank [1] 4/24
Mr. Kuehne [3] 17/13
20/7 38/10
Mr. Lubin [1] 37/16
Mr. Salter [1] 38/4
Mr. Shearin [2] 24/24
38/24
Mr. Singerman [4] 7/5
13/4 37/6 37/15
Mr. Singleman [5] 7/4
9/5 9/7 25/21 25/23
Mr. Ventral [1] 27/1

Mr. Ventrella [9]
7/14 7/16 10/17 10/18
10/19 26/25 27/3
30/23
Mr. Winsauer [9] 3/18
7/10 7/11 10/5 10/7
10/8 26/13 26/15
26/16
Ms [1] 39/4
Ms. [1] 24/21
Ms. Quinlan [1] 24/21

**N**

name [2] 9/15 26/4
NANCY [5] 2/4 3/23
7/15 10/16 27/1
national [1] 38/15
necessarily [2] 22/20
35/1
necessary [1] 15/22
need [7] 5/13 12/2
25/17 34/24 39/22
40/6 40/9
needed [2] 5/6 11/15
needs [2] 8/17 34/14
neglected [2] 4/4 5/23
Nevada [1] 11/9
never [1] 17/17
new [2] 15/11 24/3
North [1] 2/5
note [2] 20/14 38/9
notes [1] 6/6
noticed [1] 4/12
notify [1] 5/3
number [1] 19/5
numbers [1] 15/12
numerous [1] 13/17
NW [1] 1/17

**O**

o'clock [3] 39/13
39/14 39/16
object [2] 11/10 11/20
objection [14] 7/1 7/6
7/9 7/12 7/16 7/18
7/24 13/7 13/10 13/11
14/8 19/10 39/10
39/20
objections [1] 7/20
obligation [1] 29/19
obvious [1] 36/5
obviously [2] 33/6
38/17
occupied [1] 6/5
October [1] 37/13
odd [1] 15/11
offer [1] 34/3
offered [1] 6/5
office [4] 3/9 5/9
13/15 13/16
Official [1] 1/24
oh [4] 11/17 12/21
15/16 19/9
okay [15] 4/3 4/6 5/25
7/4 9/13 10/4 11/17
12/4 12/7 12/18 27/10

old [1] 4/14
ones [1] 20/12
open [1] 7/9
operation [1] 18/15
opposed [2] 27/16
28/2
opposition [2] 28/19
36/11
order [5] 3/1 5/16
31/16 40/4 40/7
orders [1] 38/8
original [1] 29/7
Orlando [1] 2/9
ought [1] 6/16
overall [1] 23/3
owners [1] 30/22

**P**

p.m [3] 1/11 5/15
40/15
PA [1] 1/18 2/4 2/10
pages [4] 14/15 14/17
15/11 15/14
Palm [1] 1/22 2/5
Palmetto [1] 2/13
paper [1] 30/13
paralegals [1] 16/25
parallel [1] 33/2
Park [1] 2/13
parks [1] 38/15
part [11] 21/8 22/1
23/3 23/7 23/15 24/7
29/4 29/21 31/9 38/7
39/1
particular [3] 24/12
27/18 33/20
parties [4] 6/8 8/5
20/9 20/10
paying [1] 14/11
pending [2] 37/20
37/21
people [3] 13/24 17/2
20/23
perceived [1] 40/6
percent [5] 15/7 15/19
15/21 15/23 20/16
PERLET [1] 2/4
personal [2] 17/5 38/9
pertains [1] 20/4
pertinent [1] 21/21
petition [1] 33/1
PHILLIP [4] 1/7 3/16
9/16 26/5
pick [3] 36/4 36/8 38/2
place [1] 18/12
Plaintiff [1] 1/5
platform [4] 13/17
13/19 13/19 21/10
pleading [5] 12/10
14/3 14/3 17/22 34/4
pleadings [3] 31/19
33/1 33/2
please [11] 3/2 3/6
3/11 4/4 6/25 8/20
8/21 25/11 27/20

Case 9:19-cr-80030-WPD Document 41-1 Entered on FLSD Docket 03/19/2019 Page 45 of 46

**P**

please... [2] 33/25
38/5
podium [4] 9/6 10/7
10/17 25/22
Pompano [1] 2/7
pool [2] 37/2 37/4
position [7] 6/11 6/12
7/2 11/13 11/19 12/11
34/18
possibility [2] 6/8 8/9
possible [1] 37/12
possibly [3] 4/16 13/4
34/21
postpone [4] 12/8
12/8 25/14 25/24
postponement [1]
25/4
posturing [1] 18/11
potentially [1] 21/17
practice [1] 24/12
predictive [2] 21/11
22/9
prefer [2] 34/15 38/17
preferable [2] 38/9
39/2
preference [1] 38/12
prejudiced [2] 34/21
36/19
prejudicial [1] 30/3
prep [1] 23/19
prepare [1] 34/25
prepared [3] 6/13 7/9
34/16
present [14] 3/14 3/16
3/18 3/25 4/1 4/5 4/8
5/17 5/18 9/6 11/9
11/16 25/12 25/22
presented [2] 28/10
28/21
pressure [2] 33/6 33/7
pressures [1] 32/25
presumably [1] 32/6
presumption [1]
35/15
pretrial [2] 23/19 24/9
pretty [1] 12/5
prices [2] 13/21 14/1
privilege [1] 36/23
privileged [1] 36/23
privy [2] 30/19 31/2
probably [9] 6/15 6/17
6/21 12/9 13/23 14/25
21/9 37/7 39/6
problem [4] 6/7 6/17
29/14 33/25
proceeding [1] 19/17
proceedings [3] 19/18
40/15 40/20
process [11] 13/16
13/20 14/6 17/8 21/5
21/8 21/16 21/22 22/1
22/15 23/15

**produced [11]** 29/5
29/12 30/4 30/8 30/9
30/15 30/20 31/1
31/20 32/5 32/7
Producing [1] 33/11
product [2] 22/21
32/23
production [3] 29/4
29/5 34/20
productions [1] 29/1
program [1] 16/5
property [2] 33/2 33/4
propose [1] 7/25
prosecute [1] 4/16
prosecuted [2] 8/7 8/8
prosecuting [1] 6/3
prosecution [3] 4/23
17/2 23/12
prosecutor [2] 32/11
provided [3] 29/1 29/9
31/19
purely [1] 29/8
purposes [1] 19/14
put [7] 13/23 18/12
23/5 23/16 23/18 28/8
33/21

**Q**

qualified [1] 20/23
quality [2] 13/22
22/17
quantity [1] 17/25
quarter [3] 24/7 24/10
35/4
question [9] 23/17
23/18 28/15 29/17
30/5 33/10 33/10
33/24 36/22
questions [6] 15/3
17/12 17/13 19/7
33/21 34/18
QUINLAN [7] 2/4 3/24
7/15 10/16 24/21 27/1
39/4
quite [3] 24/3 33/12
34/1

**R**

randomly [1] 6/18
Raton [1] 2/14
reach [2] 20/22 35/11
READER [1] 1/16 3/8
6/3 27/15 28/1
ready [7] 24/9 32/21
32/21 33/11 33/14
34/14 34/17
real [2] 15/5 18/12
reality [2] 17/4 23/16
really [6] 11/11 15/5
18/20 24/5 30/12 31/2
Realtime [1] 40/19
reason [1] 30/3
reasonable [1] 23/19
reasons [2] 27/17
28/3 29/9

**rebuttal [1]** 40/3
received [2] 13/10
31/13 32/1
recess [4] 4/18 5/8
5/14 5/15
recognize [2] 23/15
37/13
record [10] 3/5 4/22
5/17 6/2 27/14 27/18
28/1 28/4 35/19 40/20
records [3] 30/9 30/12
30/13 31/7 31/8 31/11
31/13
recreated [1] 29/12
recuse [1] 7/2
referenced [1] 22/7
refine [1] 22/12
regard [1] 5/21
regarding [2] 6/16
35/5
Registered [1] 40/18
regular [1] 15/13
regularly [1] 21/15
relevant [14] 15/8
15/14 15/15 15/19
15/22 15/23 16/3 21/7
21/18 21/23 21/24
21/25 22/1 22/19
rely [1] 35/15
remain [1] 23/20
remainder [1] 22/8
remaining [1] 7/6
remember [4] 16/13
16/14 16/15 18/1
repeat [1] 20/10
repetitive [1] 28/23
reply [4] 13/9 19/11
20/1 20/2
Reporter [4] 1/23 1/24
40/18 40/19
reports [1] 19/4
represent [2] 3/18
26/20
representative [5] 4/7
4/10 8/1 9/23 11/1
representatives [1]
8/15
represents [1] 29/11
reproduced [1] 30/17
request [6] 17/23
20/12 21/4 27/11
37/11 37/14
require [2] 31/6 31/9
required [2] 28/7 32/2
reset [1] 24/9
resident [1] 11/8
resource [1] 33/18
resources [1] 33/17
response [2] 13/7
22/14
responsive [3] 21/13
23/9 34/2
rest [1] 29/6
restart [1] 27/25
restitution [1] 8/9
result [5] 5/10 11/15

**retired [1]** 20/20
return [3] 32/18 33/2
33/3
returned [1] 32/12
review [6] 14/11 16/20
20/17 20/19 21/8
22/23
reviewed [3] 14/16
32/6 36/22
reviewers [1] 14/2
reviewing [6] 13/24
15/3 16/25 31/10
31/17 31/20
reviews [1] 20/22
RICHARD [1] 1/21
3/13 13/3
right [19] 4/11 5/2
5/14 7/25 12/15 18/3
18/4 18/21 25/1 25/4
25/15 25/25 26/7
26/18 27/5 32/12 38/3
38/20 39/12
RMR [2] 1/23 40/24
Road [1] 2/13
ROBERT [7] 2/8 2/13
3/17 3/21 7/12 10/6
26/14
Rolls [1] 13/21
rooms [1] 38/15
Royce [1] 13/21
Ruiz [1] 37/17
rule [1] 35/1
ruled [2] 37/24 37/25
ruling [1] 35/5
rulings [1] 6/20
running [2] 15/7
15/18
RUSSELL [3] 1/7 2/2
7/23

**S**

SALTER [6] 2/6 3/11
8/22 24/14 25/11 38/4
scanned [1] 30/13
scheduled [1] 38/14
scheduling [1] 38/23
school [4] 8/12 14/10
25/6 39/6
SE [3] 1/19 2/2 2/11
search [5] 14/6 16/3
17/14 22/12 32/14
searchable [1] 13/19
searches [1] 16/22
seated [1] 3/2
second [1] 30/11
secondary [1] 23/23
securities [1] 20/22
see [3] 4/19 22/9
28/18
seeking [2] 11/14 22/2
sees [1] 31/5
sending [1] 29/15
sense [1] 31/22
separate [1] 28/22
separates [1] 28/21

**September [2]** 18/22
18/24
September 17th [2]
18/22 18/24
set [12] 12/19 18/14
27/18 28/4 28/12
29/20 29/20 29/25
30/11 37/19 39/12
39/25
sets [1] 28/21
sever [1] 16/6
severing [1] 12/16
sharing [1] 18/15
SHEARIN [4] 2/13
3/21 24/24 38/24
SHINER [1] 2/4
Shores [2] 2/7 3/12
short [1] 34/22
sic [6] 7/4 9/5 9/7 23/4
25/21 25/23
sign [1] 40/4
significant [1] 21/4
similar [1] 28/9
simply [1] 23/14
simultaneously [1]
31/11
sincerely [1] 18/17
SINGERMAN [7] 1/7
1/21 3/14 7/5 13/4
37/6 37/15
single [3] 14/15 19/12
19/12
Singleman [5] 7/4 9/5
9/7 25/21 25/23
sir [4] 11/2 25/20 26/2
27/9
six [2] 14/4 20/13
size [1] 20/15
slow [1] 33/12
small [2] 22/19 36/23
soft [1] 27/22
somebody [2] 5/12
24/23
soon [5] 29/3 33/5
33/15 36/16 40/1
sound [1] 33/16
South [1] 1/22
SOUTHERN [2] 1/1
5/7
speak [3] 12/5 17/16
30/21
speaking [1] 13/4
speaks [1] 27/21
specifically [1] 20/16
specifics [1] 17/14
speedy [10] 19/10
19/13 19/14 20/4 24/5
25/15 25/25 26/8
26/18 27/5
spend [2] 17/9 17/10
spending [2] 17/7
17/8
spent [1] 18/12
spoken [1] 11/9
staff [1] 16/19
stage [2] 22/16

**stands [1]** 38/20
**start [3]** 6/23 8/19 19/6
**started [1]** 33/15
**state [3]** 9/15 14/11 26/4
**state-of-the-art [1]** 14/11
**stated [2]** 7/8 19/11
**statement [1]** 18/1
**STATES [3]** 1/1 1/4 3/3
**status [1]** 5/19
**statute [1]** 33/7
**stay [1]** 6/19
**staying [4]** 4/20 7/12 8/6 11/20
**step [6]** 4/20 9/2 9/11 9/21 10/12 10/23
**STEPHEN [1]** 2/6
**stepping [1]** 10/7
**Steve [3]** 3/11 8/21 25/11
**stood [1]** 5/24
**straight [2]** 27/18 28/4
**strategic [1]** 31/21
**strategy [14]** 9/1 9/10 9/20 10/2 10/11 10/22 11/4 25/3 25/14 25/24 26/6 26/10 26/17 27/4
**Street [5]** 1/17 1/19 1/22 2/9 2/11
**strongly [1]** 33/22
**stuff [1]** 16/20
**subpoenas [1]** 16/23
**suggest [2]** 21/2 29/17
**suggested [1]** 19/10
**suggestion [1]** 14/7
**suggestions [2]** 22/14 24/11
**suggests [1]** 31/19
**Suite [4]** 1/19 2/5 2/11 2/14
**summaries [1]** 19/4
**summer [1]** 16/16
**supported [1]** 21/4
**suppose [1]** 34/3
**supposed [2]** 18/21 38/7
**sure [3]** 29/16 35/24 36/14
**suspected [1]** 5/4
**system [1]** 18/7

**T**

**table [2]** 17/17 17/20
**take [9]** 4/18 4/21 5/8 5/14 6/5 17/4 17/9 21/24 28/5
**taken [2]** 16/22 17/3
**takes [3]** 15/17 16/10 33/15
**talents [1]** 24/4
**talk [8]** 4/18 8/24 9/8 25/18
**talking [3]** 34/9 34/11 37/17
**task [1]** 21/14
**taught [1]** 14/9
**team [2]** 13/23 21/19
**technical [4]** 28/24 28/25 29/8 30/11
**technician [1]** 28/25
**telling [1]** 22/11
**ten [2]** 12/3 20/18
**terms [5]** 14/6 16/4 17/24 22/12 30/16
**testimony [1]** 36/19
**thank [16]** 9/4 9/13 10/4 10/14 11/6 12/6 12/23 20/6 24/13 25/20 26/2 26/24 27/10 27/14 36/3 39/17
**Thanks [1]** 40/12
**theft [1]** 4/15
**thing [7]** 15/15 16/9 17/4 19/9 36/2 36/3 37/13
**things [5]** 5/22 13/6 13/8 13/10 13/21 21/6 23/5 33/8
**think [48]**
**thinking [4]** 15/13 16/17 18/2 35/16
**thought [2]** 5/5 28/17
**thousand [1]** 15/11
**three [4]** 16/21 16/24 20/14 29/5
**three-and-a-half [2]** 16/21 16/24
**three-lawyer [1]** 20/14
**throw [1]** 15/15
**throwing [1]** 15/12
**time [28]** 8/17 8/23 9/8 9/17 10/8 10/19 11/18 12/2 14/4 15/17 15/24 18/2 20/16 20/25 21/7 21/19 22/2 22/5 23/19 23/21 24/8 25/3 25/17 31/13 32/11 33/15 34/13 34/24
**timing [2]** 13/10 32/25
**titled [1]** 13/8
**today [7]** 3/25 4/2 6/4 20/11 28/9 34/19 36/25
**today's [1]** 11/12
**told [4]** 30/16 33/24 38/21 39/1
**toll [6]** 25/4 25/14 25/24 26/7 26/17 27/14
**tomorrow [1]** 21/24
**tools [2]** 18/13 35/13
**topic [1]** 20/2
**tranche [2]** 30/10 30/11
**tranches [1]** 32/4
**transcript [2]** 1/12

**treating [1]** 15/16
**trial [34]** 1/12 12/19 12/21 12/25 15/24 18/8 19/11 19/13 19/14 20/4 23/19 24/5 24/10 25/5 25/14 25/15 25/24 25/25 26/8 26/18 27/5 27/12 29/20 29/25 32/21 34/15 34/15 35/13 35/25 37/8 37/16 37/19 37/20 39/12
**tried [8]** 8/12 20/12 20/22 25/7
**true [3]** 15/23 21/23 33/17
**try [1]** 36/9
**trying [2]** 23/9 36/10
**tune [1]** 14/11
**turns [1]** 28/24
**tweak [1]** 21/15
**twice [1]** 22/18
**two [8]** 14/12 14/25 28/21 32/14 37/3 37/22 37/22 38/14
**two-week [1]** 37/3
**type [2]** 21/12 22/10
**typical [2]** 24/2 24/2

**U**

**U.S [1]** 1/14
**uncomfortable [1]** 8/5
**understand [3]** 20/9 22/6 29/18
**understanding [1]** 30/14
**understands [2]** 36/15 36/15
**understatement [1]** 17/24
**undertaking [1]** 17/6
**unilaterally [1]** 40/7
**UNITED [3]** 1/1 1/4 3/3
**unlimited [2]** 33/17 33/17
**unsatisfactory [1]** 30/16
**unusual [1]** 19/25
**USC [1]** 19/15
**use [1]** 13/19
**usually [1]** 16/14

**V**

**vacation [2]** 38/14 38/18
**valuable [1]** 36/1
**value [1]** 35/25
**various [2]** 13/21 32/24
**Vassar [1]** 2/9
**VENTECH [10]** 1/9 2/13 3/21 7/19 11/1 11/3 24/24 26/20 27/7 30/23
**Ventech's [1]** 4/7

**VENTRELLA [14]** 1/8 2/4 3/24 3/25 4/1 7/14 7/16 10/15 10/17 10/18 10/19 26/25 27/3 30/23
**version [2]** 22/23 24/3
**versus [1]** 3/3
**victim [2]** 4/14 4/17
**victimized [1]** 5/11
**view [1]** 30/25
**Virtually [1]** 20/11
**voice [1]** 27/22
**Volkswagen [1]** 13/22
**volume [2]** 23/4 34/7 34/9
**VORPE [2]** 2/4 3/24
**VORPE-QUINLAN [2]** 2/4 3/24

**W**

**waiting [2]** 15/1 15/2
**waives [1]** 6/13
**walk [1]** 5/1
**want [11]** 4/15 11/22 11/23 12/7 15/7 18/5 22/6 24/14 24/16 24/19 36/14
**wanted [4]** 6/8 17/4 20/8 21/5
**wants [3]** 4/20 6/19 24/11
**warrant [1]** 32/14
**Washington [2]** 1/17 4/24
**way [4]** 2/7 5/22 6/4 11/22 11/25 16/11 34/21
**we've [13]** 11/7 14/18 14/19 15/20 16/4 16/10 17/3 17/3 18/12 18/15 20/22 32/2 33/22
**week [8]** 14/15 22/17 22/22 31/12 34/16 37/3 37/3 38/16
**weekend [2]** 13/9 20/3
**weeks [6]** 14/21 14/24 16/1 21/24 37/22 37/22
**weighing [2]** 34/12 34/13
**well [17]** 4/9 12/11 15/10 15/11 15/16 16/10 18/2 23/1 23/2 23/9 28/9 29/1 29/14 33/6 33/20 33/21 36/21
**went [2]** 13/19 29/12
**West [3]** 1/22 2/5 2/13
**whack [1]** 15/16
**wife [3]** 38/6 38/21 38/25
**WILLIAM [1]** 1/13
**WILLIAMS [3]** 1/7 2/2 7/23

**winsome [2]** 2/9 3/18 3/18 7/10 7/11 10/5 10/7 10/8 26/13 26/15 26/16
**witnesses [3]** 16/8 19/5 36/1
**words [1]** 15/1
**work [5]** 19/6 20/13 22/20 22/21 32/23
**worked [1]** 21/14
**working [8]** 13/12 13/13 14/10 16/20 16/25 17/1 20/24 22/4
**works [1]** 21/19
**worry [1]** 12/16
**writing [1]** 11/19
**written [1]** 28/9
**wrong [2]** 14/10 29/18

**Y**

**yeah [1]** 18/24
**year [4]** 4/14 14/9 31/9 34/25
**years [10]** 14/25 16/21 16/24 17/17 20/18 20/18 30/9 30/20 31/1 32/15