UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 19-80030-CR-DIMITROULEAS

UNITED STATES OF AMERICA

vs.

**ROBERT DIMAGGIO,**

    **Defendant.**

_____ /

## FACTUAL PROFFER

The United States of America and Defendant, Robert DiMaggio, agree that were this case to proceed to trial, the government would prove beyond a reasonable doubt the following facts. They further agree that these are not all the facts that the United States would prove if the case proceeded to trial, but are sufficient to prove the crime of conspiracy to defraud the United States, in violation of Title 18, United States Section 371, as charged against the Defendant in Count 1 of the indictment.

As charged in Count 1 of the indictment, in Palm Beach County, in the Southern District of Florida, and elsewhere, Robert DiMaggio did willfully, that is, with the intent to further an object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Phillip Braun, Aaron Singerman, and Blackstone Labs, LLC to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful functions of the United States Food and Drug Administration (FDA), an agency of the United States Department of Health and Human Services, in the FDA's oversight and regulation of food, drugs, and dietary supplements, in violation of Title 18, United States Code, Section 371.

In or around 2012, the Defendant, a resident of Henderson, Nevada, owned a company selling products labeled as dietary supplements and employed Phillip Braun and Aaron Singerman. Defendant had been selling a product to consumers, Super DMZ RX 2.0, which contained dimethazine and methylstenbolone, each of which was a synthetic steroid, also referred to as a "designer steroid" or "prohormone." For a product like Super DMZ RX 2.0 to be a legal "dietary supplement" under the Food, Drug, and Cosmetic Act (FDCA), it had to contain legal "dietary ingredients." Defendant knew that dimethazine and methylstenbolone were synthetic substances designed to build muscle and were not legal dietary ingredients, and thus he knew that Super DMZ RX 2.0 was not a legal dietary supplement.

In early 2012, Defendant knew that the FDA, the federal agency that oversees and regulates dietary supplements in the United States, was enforcing the FDCA with regards to dietary supplements and synthetic steroids. To reduce the likelihood of the FDA's closing or negatively affecting his existing business, Defendant coordinated with Phillip Braun and Aaron Singerman to incorporate Blackstone Labs, LLC ("Blackstone") as a limited liability company in the State of Florida in the summer of 2012. The Defendant, Braun, and Singerman would each be owners of Blackstone, which operated primarily in Palm Beach County, in the Southern District of Florida. This allowed Defendant to continue to profit from the sales of the Super DMZ RX 2.0 product, which reduced his exposure to law enforcement, and allowed Singerman and Braun to earn a share of profits. Defendant continued to live in Nevada and give Braun and Singerman advice on how to operate the company. Defendant remained an owner of the company until in or around May 2014, when he sold his ownership interest to Braun and Singerman, yet continued to receive monthly payments from Blackstone until in or around September 2017. Braun and Singerman

lived in South Florida and worked at Blackstone's office. After receiving initial input from the Defendant, Braun and Singerman ran Blackstone's day-to-day operations.

Defendant, Singerman, and Braun established Blackstone to sell products falsely labeled and marketed as "dietary supplements" throughout the United States. The first product that Blackstone sold was "Super DMZ RX 2.0." Before starting Blackstone, Defendant discussed with Braun and Singerman his concerns that Super DMZ RX 2.0 was not a legal dietary supplement. Nevertheless, Defendant, Braun, and Singerman agreed to proceed with selling Super DMZ RX 2.0 through Blackstone. To conceal the illegal nature of Super DMZ RX 2.0 from consumers and the FDA, Defendant, Braun, and Singerman used a web site, www.superdmz.com, that falsely described the product as completely legal, even when the conspirators knew it was not legal.

Defendant discussed with Braun and Singerman other measures to avoid FDA scrutiny or enforcement of the laws that prohibited the sale and distribution of Super DMZ RX 2.0 as a dietary supplement. For instance, Defendant discussed what they and Blackstone ought to do if the FDA were to contact Blackstone and instruct that a product like Super DMZ RX 2.0 was illegal to sell under the FDCA.

In furtherance of the conspiracy alleged in Count 1, and to accomplish the object of defrauding the United States, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, the following overt acts, among others:

Overt Act 1: On or about August 28, 2012, the Defendant, Aaron Singerman, and Phillip Braun conferred by telephone and Skype and decided Blackstone would register as a limited liability company and sell a product known as Super DMZ RX 2.0.

Overt Act 2: On or about August 29, 2012, the Defendant, Phillip Braun, and Aaron Singerman caused Blackstone to be incorporated under the laws of Florida as a limited liability company.

Overt Act 3: In or around August 2012, Blackstone, Phillip Braun, Aaron Singerman, and the Defendant marketed and sold prohormones through the website, www.superdmz.com.

Overt Act 4: In or around August 2012, the Defendant and Phillip Braun, Aaron Singerman, and Blackstone Labs used the web site, www.superdmz.com, to sell Super DMZ RX 2.0, falsely claiming that the product was a dietary supplement and that it was "100 % legal."

Overt Act 5: On or about March 13, 2014, the Defendant, in an email to Aaron Singerman about FDA enforcement announcements concerning the designer steroid products Methadrol and Super DMZ RX 2.0, told Singerman that "[o]nce you get an FDA letter I would move all the MDE and SDMZ that is left to a different location (in case they [the FDA] show up), and remove them from the website, and sell it to the retailers only til its [sic] gone."

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

GUSTAV W. EYLER
DIRECTOR
U.S. DEPARTMENT OF JUSTICE
CONSUMER PROTECTION BRANCH

Date: 11/19/19

By: _____
ALISTAIR READER
TRIAL ATTORNEY
U.S. DEPARMENT OF JUSTICE

Date 11/19/19

By: _____
DAVID A. FRANK
SENIOR LITIGATION COUNSEL
U.S. DEPARTMENT OF JUSTICE

4

Date: 11-19-19    By: _____
                      RUSSELL J. WILLIAMS, ESQ.
                      ATTORNEY FOR DEFENDANT

Date: 11-19-19    By: _____
                      ROBERT DIMAGGIO
                      DEFENDANT