UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80030-CR-Dimitrouleas

UNITED STATES OF AMERICA

vs.

PHILLIP BRAUN, et al.,

      Defendants.
_____/

### GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF IMPEACHMENT EVIDENCE, ECF NO. 385

The United States, by and through undersigned counsel, hereby respectfully submits its opposition to Defendants' Motion to Compel Production of Impeachment Evidence, with Incorporated Memorandum of Law, ECF No. 385 ("Defense Motion"). The defense request for an expert's personnel records is a pure fishing expedition with no basis in fact. Moreover, it fails to explain why the records are the source of impeachment information or material. The Court should follow Eleventh Circuit precedent in rejecting requests for confidential personnel files based on mere speculation that they include *Brady* material. In any event, the prosecution has already produced any discoverable information in its possession.

### BACKGROUND

The Defense Motion seeks to compel the production of documents relating to Dr. Paul Hayashi, who treated a victim identified as "C.H." in the Indictment in 2015 – well prior to the investigation or this indictment. Count 4 charges the defendants with a conspiracy to distribute controlled substances, and includes the allegation that "serious bodily injury resulted to C.H. from the use of methyl-1-etiocholenolol" in a product

1

distributed as a part of the defendants' conspiracy. Indictment, ECF No. 1 at 19. C.H. was treated in 2015 by Dr. Hayashi when the doctor was employed as Medical Director of Liver Transplantation at the University of North Carolina, Chapel Hill.

The government interviewed Dr. Hayashi about C.H. in January 2019. During discovery, the government provided notice that Dr. Hayashi will be called to give expert testimony about C.H.'s injury, diagnosis, and treatment. Dr. Hayashi is not being compensated for his expert opinion in this case, but the government will reimburse his travel expenses at trial (as it will with other government witnesses). The government also provided the defense with a summary of the doctor's opinion and his expected expert testimony, as well as his Curriculum Vitae ("CV") and approximately 1,000 pages of C.H.'s medical records that include and inform his opinion.[1] The government subsequently assisted defendants inquiring into whether there were any additional relevant medical records, including securing releases from C.H. for medical records from additional providers. As government counsel has indicated, the doctor's expert opinion is informed by his treatment of C.H. in 2015, by the medical records that have already been produced to the defense, and by the doctor's expertise as a hepatologist (liver specialist). In March 2020, government counsel provided the defense with an updated CV for Dr. Hayashi, which noted that Dr. Hayashi had started a new position as a Medical Officer in the Office of New Drugs at the Food and Drug Administration ("FDA") in February 2020.

---

[1] On May 17, 2019, the government produced the University of North Carolina medical records concerning C.H. On September 27, 2019, the government disclosed a summary of Dr. Hayashi's anticipated expert testimony along with his CV. Among other views that are described in the summary, Dr. Hayashi's expert testimony is expected to include his opinion that C.H. suffered an acute, drug-induced (anabolic-steroid induced) liver injury, and that C.H.'s liver injury was severe and would have been graded as a level 4 ("severe") on the 5-point scale used by the Drug-Induced Liver Injury Network ("DILIN").

The Defense Motion focuses on Dr. Hayashi's new position at the FDA. The Defense Motion supposes that Dr. Hayashi's expert testimony must be tainted by his new position with the FDA, the process through which he obtained it, or by his contacts with the FDA. *See* Defense Motion at 3-4, 5. The Defense Motion hypothesizes, without a single supporting fact, that the doctor's role as a fact/expert witness in this case must have been discussed and must have influenced his hiring at the FDA. *Id*. at 3, 5-7. The Defense Motion also makes the incredible assumption that the FDA would have consulted C.H., a former patient, in the hiring of the doctor as a civil servant. *Id*. at 3, 5. Based on these meritless suppositions, the Defense Motion speculates that there must be *material* impeachment evidence to be found amidst various categories of emails and documents and other records. The Defense Motion insists that the Court compel government counsel to search for and then produce such records, along with other records related to this case and the doctor's expertise. *Id*. at 9.

Before the Defense Motion was filed, the government interviewed Dr. Hayashi on June 5, 2020. Information obtained from that interview was sent to the defense by letter on June 9, 2020 (before the filing of the Defense Motion), stating in relevant part:

- In connection with Dr. Hayashi's application to the FDA and the entire hiring process, the topics of patient C.H., Dr. Hayashi's potential testimony about C.H.'s liver injury, and Dr. Hayashi's role as an expert witness in this case, never arose. Nor have these topics arisen since Dr. Hayashi began his position at the FDA (apart from perhaps logistical arrangements with his new employer regarding his trial testimony).

- Prior to applying for the job at the FDA, Dr. Hayashi did not apply for or receive grant money from the FDA. Prior to applying for the job at the FDA, Dr. Hayashi was acquainted with FDA scientists through professional organizations of which Dr. Hayashi was a member.

- Prior to applying for the job at the FDA, Dr. Hayashi did not consult for the FDA and did not work with FDA scientists/physicians on papers or articles.

3

- Dr. Hayashi has not communicated with C.H. about Dr. Hayashi's application to the FDA, his desire to work for the FDA, the hiring process at the FDA, or his new position at the FDA.

- In 2018, Dr. Hayashi became aware of the FDA's desire to hire hepatologists (physicians who have expertise in liver diseases). We understand the timeline to be approximately as follows: Dr. Hayashi submitted an application in December 2018, was interviewed in the spring of 2019, and accepted the FDA's offer in the summer of 2019. He left his position at UNC in January 2020 and began working with the FDA in February 2020 as a Medical Officer in the Office of New Drugs. He is a career civil servant.

In short, "the government is aware of no evidence to suggest that Dr. Hayashi's anticipated expert testimony about C.H.'s liver injury is influenced by his new position with the FDA, the process through which he was hired, or by his previous contacts with the FDA."[2]

## **LEGAL STANDARDS**

However one may construe the government's discovery obligations under Fed. R. Crim. Pr. 16, *Brady, Giglio*, and their progeny, those obligations certainly do *not* provide for open discovery or fishing expeditions. When seeking discovery under the "material to the preparation of the defendant's defense" prong of Rule 16, a defendant must do more than generally describe what is sought or offer a conclusory argument about how the requested item is material to the defense. *United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003). Under Rule 16, as the Eleventh Circuit has stated, the defendant must "'show' 'more than that the [item] bears some abstract logical relationship to the issues in the case. . . . There must be some indication that the pretrial disclosure of the [item] would . . . enable[ ] the defendant significantly to alter the quantum of proof in his favor.'" *Id.* at

---

[2] The June 5, 2020 interview of Dr. Hayashi was reduced to a memorandum of interview ("MOI"), which is being provided to defendants in discovery. Subsequent to the June 5, 2020 interview, the government learned that Dr. Hayashi did not provide copies of any reports or published articles in connection with his application to the FDA.

4

1251 (citation omitted). Likewise, the Eleventh Circuit has recognized that with respect to *Brady* and its progeny:

> The defendant's right to the disclosure of favorable evidence . . . does not "create a broad, constitutionally required right of discovery." . . . Indeed, a "defendant's right to discover exculpatory evidence does not include the unsupervised right to search through the [government's] files," . . . nor does the right require the prosecution to deliver its entire file to the defense. . . . Rather, *Brady* obligates the government to disclose only favorable evidence that is "material." The "touchstone of materiality is a 'reasonable probability' of a different result'. . . . Accordingly, under *Brady*, the government need only disclose during pretrial discovery (or later, at the trial) evidence which, in the eyes of a neutral and objective observer, could alter the outcome of the proceedings.

*Id.* at 1251-52 (internal citations omitted).

In light of these standards, the Eleventh Circuit has repeatedly rejected defense arguments for production of personnel files under Rule 16 or *Brady/Giglio* that were based on speculation or that amounted to "fishing expeditions." In *United States v. Quinn*, 123 F.3d 1415, 1422 (11th Cir. 1997), the Eleventh Circuit rejected a defendant's argument for the production of a witness's personnel file and noted that "mere speculation that a government file may contain *Brady* material" is not enough to require disclosure. *Id.* (quoting *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985)). *See also United States v. Pitt*, 717 F.2d 1334 (11th Cir. 1983) (deeming a defendant's unsubstantiated request to review a law enforcement agent's personnel file "frivolous"); *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989) ("A prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find potentially impeaching evidence every time a criminal defendant makes a *Brady* request for information regarding a government witness."); *Jordan*, 316 F.3d at 1249-57 (reversing dismissal of an indictment for alleged violations of government's discovery and *Brady* obligations, and noting that the defense's discovery requests went well beyond what the law required).

5

## **ARGUMENT**

The Court should deny the defense request because it fails to support its claim for personnel records with actual facts, and because the government has already provided information refuting their impeachment theory. The defense argument for bias may be appropriate for cross-examination at trial, but has not identified any adequate grounds for discovery that exceeds Rule 16.

> **I.     The Government is Aware of No Responsive Brady and Giglio Information Related to the Defense Motion's Specific Concerns, and Remains Aware of its Continuing Discovery Obligations.**

Of course, the government remains aware of its ongoing *Brady* and *Giglio* obligations. The defense has raised specific concerns about bias concerning Dr. Hayashi's employment with the FDA. After a timely inquiry, government counsel is unaware of any evidence to suggest that Dr. Hayashi's anticipated expert testimony is influenced by his new position with the FDA, the hiring process, or by his contacts with the FDA. The government already provided answers to relevant questions posed to Dr. Hayashi. Should government counsel become aware of any discoverable information or records, they will be disclosed.

> **II.    The Defense Motion for "Impeachment Evidence" is Based on Speculation Already Refuted by Facts.**

The Defense Motion's request for "impeachment" evidence concerning the doctor's employment with the FDA is built on layers of speculation, which are unsupported by fact and contradicted by evidence. Based on the simple fact that Dr. Hayashi — a highly experienced physician who was the Medical Director of Liver Transplantation at a major hospital — now works for the FDA, the defense first supposes that the doctor's testimony is somehow biased or tainted because of his new employment. *See* Defense Motion at 6.

The defense next imagines that C.H. and the doctor's testimony must have been a factor or otherwise discussed during the hiring process at the FDA.[3] Last, the defense conjectures that there must be evidence in support of their speculation to be found in emails, documents, and other records unrelated to the topic of the expert testimony: whether C.H.'s liver failure in 2015 was caused by defendants' anabolic steroid product. *Id.* at 3. The defense would have the Court order government counsel to gather and produce confidential records not currently in possession of the prosecution team. Defense counsel would then pick through the documents, in search of "develop[ing] their strategy of cross-examining" Dr. Hayashi. *Id.* at 4. This kind of fishing expedition does not meet the standards set forth by *Giglio* or the Eleventh Circuit.

As relevant here, the defense's proposed fishing expedition involves the search for and production of records in the following categories:

- #1: When did the communications between FDA or any governmental agency and Dr. Hayashi begin with respect to possible employment? Who initiated these communications? *Id.* at 3.

- #2: Provide all salary/payment information concerning Dr. Hayashi's employment, including any employment contract[s] or employment terms. *Id.*

- #5: Provide a copy of all contacts in every form whatsoever between Dr. Hayashi and the Federal Government concerning his possible employment with the FDA or any other Federal Government agency. Voice mails with the Government are now archived and should be included. This request also includes any solicitations, applications, and forms relating to employment with the Federal Government. *Id.*

- (Catch-all): Any other documents or information relating to the arguments made in the defense motion. Def. Proposed Ord., ECF No. 385-1.

---

[3] *Id.* at 3 ("his anticipated testimony . . . would surely have been a subject of discussions"); at 5 ("[t]he documents would show why he made that career move . . . . [and] would shed light on whether the subject of his upcoming favorable testimony . . . was raised in the employment process.").

These questions are hardly adequate grounds for additional discovery. With these categories, the defense essentially seeks to compel the production of the doctor's entire FDA personnel file, regardless of its actual relevance or confidential nature.

In light of the discovery and *Brady/Giglio* standards in the Eleventh Circuit, this amounts to nothing more than a fishing expedition. *See Quinn*, 123 F.3d at 1422. The defense can point to no fact other than that Dr. Hayashi's recent employment with the U.S. government, even though this is entirely consistent with Dr. Hayashi's more than two decade career in public service working in the military and at public institutions. As such, the defense demands are insufficient on their face to warrant the relief sought. The defense speculation is also further undermined by Dr. Hayashi's recent interview. The interview makes clear that Dr. Hayashi's role as a witness in this case did not come up or play any role in the doctor's acquisition of his new position at the FDA. Therefore, there is no basis to order government counsel to produce records under these categories so that the defense can troll through them in the hopes of finding something to use against a witness at trial.[4]

The same is true of two additional categories sought by the defense:

- #4: Did any other person involved in any way with C.H. provide information to the Federal Government in support of Dr. Hayashi's employment?

- #6: Was C.H. consulted about the government employment status of Dr. Hayashi? If yes, provide all documentation thereof.

---

[4] Furthermore, with respect to category #1 (timing of doctor's employment), the government has already provided Dr. Hayashi's explanation, and the corresponding MOI. As for category #2 (doctor's salary and contract information), Dr. Hayashi is not and has never been a retained expert in this case who is paid for his testimony. The defense certainly remains free to try to impeach the doctor's testimony with the fact that he now works for the FDA, but his salary as a federal employee is no more relevant to this trial than the salaries of any federal agents, federal chemists, or other law enforcement agents who might testify at trial. *Cf. S.E.C. v. Nadel*, No. CV 11-215(WFK)(AKT), 2012 WL 1268297, *2-5 (E.D.N.Y. April 16, 2012) (a *civil* case holding that the S.E.C. did not have to disclose the salary of an employee-expert and noting that the expert could be impeached by virtue of his full-time salaried position, and that defendants had not pointed to any specific circumstance raising suspicion that the particular compensation affected the employee-expert's opinions).

Defense Motion at 3. As communicated to the defense, Dr. Hayashi indicated that he has not communicated with C.H. about his new position at the FDA. These facts all severely undermine the speculative basis for defense requests, and there is no basis to compel the search for or production of additional information.

The defendants cite *United States. v. Lindstrom* for the proposition that their Sixth Amendment rights hinge on the disclosure of Dr. Hayashi's confidential personnel records. Defense Motion at 6. In *Lindstrom*, the Eleventh Circuit reversed a district court that denied defendants the ability to review psychiatric records and to present certain evidence on cross examination. 698 F.2d 1154, 1165 (11th Cir. 1983). Yet *Lindstrom* is dramatically different from the issue at hand for two key reasons. First, the *Lindstrom* court's decision focused on the importance of mental health evidence in attacking witness credibility—a scenario unrelated to this case. *Id*. at 1166. Additionally, the *Lindstrom* defense had significant evidence that the records in question would contain key impeachment evidence, e.g., legitimate and substantial grounds to request access to confidential information.[5] *Id*. at 1161. Ultimately, *Lindstrom* says nothing about whether defendants are entitled to peruse private personnel records without a factual basis.

---

[5] In *Lindstrom*, the defense had evidence that the "star" witness in question had been hospitalized for a suicide attempt, had attempted murder for hire, was involuntarily committed after a drug overdose, was charged with firing a shotgun through a purported lover's house, was again involuntarily committed, and was diagnosed with "schizophrenic reaction," a "history of hallucinations," and was "suicidal – homicidal and delusional." 698 F.2d at 1161. The trial court nonetheless refused to grant the defense access to psychiatric records or to introduce relevant records as evidence, and ultimately denied the jury "evidence necessary for it to make an informed determination of whether the witness' testimony was based on historical facts as she perceived them or whether it was the product of a psychotic hallucination." *Id.* at 1167.

### III. The Remaining Defense Requests Should Likewise Be Denied

After layering speculation upon speculation about the doctor's relationship with the FDA, the Defense Motion also seeks to compel the search for and production of records and information that exceed Rule 16's requirements and have nothing to with the doctor's new position at the FDA, which is their theoretical grounds for impeachment:

- #3: Provide all information, documents, and material that Dr. Hayashi has reviewed, drafted, prepared, or analyzed in connection with this case.

- #7: Provide copies of all documents Dr. Hayashi authored concerning the effects of body building substances on the liver. Provide copies of all articles or reports written by Dr. Hayashi with relevance to the substances in this case, including any documents he submitted to the Federal Government in connection with [his] employment. (This request was meant to include all articles [or] documents written by Dr. Hayashi in collaboration with the FDA at any time).

*Id.* at 3. Fed. R. Crim. Pro. 16(G) requires that the government produce a summary of an expert witness's testimony it intends to use in its case-in-chief, and that the summary "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." The government produced this information months ago: Dr. Hayashi's anticipated testimony is based on his interactions with and treatment of C.H., copies of University of North Carolina medical records that were provided to the defense in discovery, and his expertise as a liver specialist, as reflected in his extensive CV. The government has also provided a lengthy list of all of Dr. Hayashi's academic publications. The defense is unsatisfied with a list of publicly-available publications that can be downloaded online or purchased, and now wants the government to provide copies that, in large part, the government counsel does not have in its possession. Rule 16 requires no such thing. The Defense Motion seeks more than is required without legal or factual basis, and the government has met its discovery obligations.

Nevertheless, government counsel recently re-reviewed the University of North Carolina medical records produced in discovery because they are records that inform Dr. Hayashi's anticipated testimony. The records include progress/encounter notes prepared by Dr. Hayashi in connection with C.H.'s treatment by the University of North Carolina. On page GOV-01882951 of Dr. Hayashi's June 5, 2015 notes — produced to defense counsel on May 17, 2019 — Dr. Hayashi wrote that C.H.'s liver injury was most likely caused by an "androgenic steroid." Later in the same notes. Dr. Hayashi wrote, "His [C.H.'s] creatinine level is elevated which we have seen, and is reported with androgen/muscle building agent heptatoxicity." Dr. Hayashi's notes then cite two published medical articles by other authors. These articles are publicly available to the defense, and they have had notice of them for more than twelve months.[6] Here, where the expert opinion was made and recorded nearly four years before the expert became aware of the criminal investigation, the expert was not compensated for his opinion, and the expert has refuted the suggestion that his hiring by FDA was related to his expert testimony, there is no basis for a fishing expedition into confidential personnel records.

## CONCLUSION

The government remains aware of its ongoing *Brady/Giglio* obligations. The defense is free to cross-examine Dr. Hayashi about alleged bias that arises from his new position at the FDA and to do its own due diligence in reading publications listed on Dr. Hayashi's CV — or the articles cited by Dr. Hayashi in medical notes associated with the

---

[6] M. Robles-Diaz et al., *Distinct Phenotype of Hepatotoxicity Associated With Illicit Use of Anabolic Androgenic Steroids,* 41(1) Alimentary Pharmacology and Therapeutics, 116, 116-25 (2015)(available at https://doi.org/10.1111/apt.13023); Randy L. Luciano et al., *Bile Acid Nephropathy in a Bodybuilder Abusing an Anabolic Androgenic Steroid,* 64(3) American Journal of Kidney Diseases 473, 473-76 (2014) (available at https://doi.org/10.1053/j.ajkd.2014.05.010).

11

care of C.H. However, the Defense Motion is based on layers of speculation that are undermined and contradicted by information provided by Dr. Hayashi and disclosed to the defense before they filed their motion. Therefore, the government respectfully requests that the Court deny the defendants' motion to compel.

Dated: July 2, 2020

                    Respectfully submitted,

                    ARIANA FAJARDO ORSHAN
                    UNITED STATES ATTORNEY

                    GUSTAV W. EYLER
                    DIRECTOR
                    U.S. DEPARTMENT OF JUSTICE
                    CONSUMER PROTECTION BRANCH

                    */s/ Alistair Reader*

By:   ALISTAIR F. A. READER
       Court ID A5502377
       STEPHEN J. GRIPKEY
       Court ID A5502620
       JOHN W. BURKE
       Court ID No. A5501294
       Trial Attorneys
       U.S. Department of Justice
       Consumer Protection Branch
       450 Fifth Street, NW Suite 6400-South
       Washington, DC 20001
       Alistair.F.Reader@usdoj.gov
       (202) 353-9930
       Stephen.Gripkey@usdoj.gov
       (202) 307-0048
       Josh.Burke@usdoj.gov
       (202) 353-2001
       (202) 514-8742 (facsimile)

## **CERTIFICATE OF SERVICE**

       I hereby certify that on July 2, 2020, I caused a copy of the foregoing document to be filed electronically with the Clerk of the Court by way of the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of CM/ECF system. Parties may access this filing through the CM/ECF system.

                                                      */s/ Alistair Reader*
                                                  Alistair F.A. Reader
                                                  Trial Attorney
                                                  U.S. Department of Justice